## 4271. EMINENT HOUSEHOLD OF COLUMBIAN WOODMEN *v.* GEORGE E. BENZ & COMPANY.

1. Where an officer of a corporation makes a contract for it within the scope of his appropriate duties, the corporation can not relieve itself of liability on the contract by reason of any by-law or other limitation on the power of the officer, not known to the other party to the contract.

2. Where a corporation, through its executive officers constituting the board of directors, for years and by a long course of dealing entrusts. the management of its business to a particular officer, and permits him to make contracts for it in connection with its business, and especially contracts similar in character to the one under consideration in this. case, such a contract would be binding on the corporation, irrespective of whether or not it was expressly authorized by the by-laws or by formal action of the executive officers or board of directors.

3. Where certain portions of interrogatories, with exhibits attached, which the trial judge had excluded from the evidence, were, by inadvertence,. left in the possession of the jury and were taken out by them when. they retired to consider the case, and, on their return to the court-room with the verdict, the attention of the judge was called to the matter, and he interrogated the foreman of the jury for the purpose of finding. out if these interrogatories or exhibits had been read or considered by the jury in their deliberations, and in reply the foreman stated that. neither the interrogatories nor the exhibits had been read or considered by any member of the jury, and that the papers (meaning the interrogatories and exhibits) had "not even been opened by any member of the jury," there was no error in refusing to grant a new trial on this. ground.

4. The numerous objections made to excerpts from the charge of the court and to rulings on evidence are wholly without merit. The law applicable to all the issues in the case was fully, clearly, and fairly presented in the instructions. No error of law whatever appears in the trial, and the verdict is fully supported by the evidence.

DECIDED OCTOBER 22, 1912.

Complaint; from city court of Atlanta—Judge Reid. April 13, 1912.

*Dorsey, Brewster, Howell & Heyman,* for plaintiff in error.

*Anderson, Felder, Rountree & Wilson, W. S. Dillon,* contra.

HILL, C. J. This was a suit against the Eminent Household of Columbian Woodmen, a corporation, to recover the purchase-price of 280 badges, sold and delivered to it on or about November 16, 1909, for forty cents each, and aggregating the sum of $112. The verdict was for the full amount sued for, and the defendant excepts to the refusal of a new trial. It is admitted that the badges were duly delivered to members of the corporation and were used by them; and the defense relied upon was that its agent who had ordered the badges for the corporation was not authorized to do so, and that therefore the corporation was not bound to pay for them. The evidence on the question of authority is practically uncontroverted, and shows in substance the following facts: The badges in question were ordered for the corporation by J. B. Frost, who had been what was called "Eminent Consul" of the Columbian Woodmen since the foundation of the order about six years before. During that time he had performed all the duties outlined in the constitution and laws of the order relating to his position, had general supervision of all the supplies and secret work, and produced the ritual and supervised its work and demonstration throughout, and determined on the supplies and ordered them. No one else connected with the organization ordered supplies of a general character except the "Eminent Consul." Frost testified that in "supplies" were included such things as "badges, ritual supplies, general paraphernalia, tools, and implements that were used in producing the ritual and exemplifying it." He testified that all these things were ordered by him during the entire period, and that he approved the bills and they were paid; and in pursuance of a uniform custom, which had always been approved by what was known as the "Eminent Council" of the corporation, he ordered the badges in question from the plaintiffs; that these badges contained the emblem of the order, the names of special conventions that were being held, and were used at the conventions of the order; that what was called the "Eminent Council" of the order was analogous to a board of directors of an ordinary corporation, and this "Eminent Council" was the executive board of the corporation. According to Frost's testimony, while the "Eminent Council" looked generally after the business of the order, to him as "Eminent Consul" was entrusted the duty of purchasing the property that the order needed in connection with its routine busi-

ness and conventions, and of doing many other things that were not specifically set forth in the by-laws and constitution. There was no evidence that any officer of the corporation had ever bought badges or other paraphernalia for the order except the "Eminent Consul," Frost; and Frost testified that all of the bills made by him of this character had been approved by the "Eminent Council," and that this bill had been disapproved simply because of friction that had arisen between him and the "Eminent Council."

The testimony introduced in behalf of the defendant as to the lack of authority on the part of Frost to order the badges in question, was to the effect that the purchase had not been approved by the "Eminent Council." This evidence, however, discloses the fact that the giving of the order by Frost, for the purchase of the badges, their reception by the corporation, and their use by the members thereof, were known to the "Eminent Council" and were not disapproved. The "Eminent Clerk" of the Supreme Secretary of the Eminent Household of Columbian Woodmen testified that he refused to pay the bill for the purchase of the badges, because he did not consider it to be for a legitimate purpose, and it had not been authorized by the "Eminent Council," and a bill could not be paid without his signature.

Irrespective of whether Frost had express authority from the "Eminent Council" or executive board of the order to make this purchase, it is clear, under the evidence, that it was apparently within the legitimate sphere of his duties; that his contracts of a similar character had always been approved by the order; that any by-law or rule restricting his power in this respect was unknown to the plaintiffs, and that the plaintiffs, in furnishing the badges, had the right to rely upon the fact that Frost, as "Eminent Consul," was authorized to make the contract. Even assuming, therefore, that there was such a by-law or rule (and this is by no means clear under the documentary evidence), the facts bring the case clearly within the principle that where the officer of a corporation makes a contract for it within the scope of his appropriate duties, the corporation can not relieve itself of liability on the contract by reason of any by-law or other limitation on the power of the officer, not known to the other party to the contract. *Johnson* v. *Waxelbaum Co.,* 1 *Ga. App.* 513 (58 S. E. 56). We also think that

where a corporation, through its executive officers constituting the board of directors, has for years and through a long course of dealing entrusted the management of its business to a particular officer, and permitted him to make contracts for the corporation in connection with its business, and especially contracts similar in character to the one now under consideration and which is resisted by the corporation as being unauthorized, such a contract would be binding on the corporation, irrespective of whether or not it was expressly authorized by the by-laws or by any formal action of the executive officers or board of directors. *Potts-Thompson Liquor Co.* v. *Potts,* 135 *Ga.* 460 (69 S. E. 734), and citations.

The foregoing principles of law are not denied; but it is insisted by learned counsel that the plaintiffs can not take advantage of these well-settled principles, because they did not sell these badges with notice of the facts indicating constructive, if not actual, authority on the part of Frost to make such contracts because of a long course of dealing with the order and the approval by it of contracts of a similar character made by him as "Eminent Consul" of the order; and that the rule of law in question has no application except to parties who had knowledge of such facts and who relied upon them in making such contracts. Under the evidence the order for the badges was within the apparent scope of Frost's authority as "Eminent Consul" of the order. It is a rule of law, we think, well grounded in principles of equity and justice, that where a corporation holds out a particular officer as authorized to make contracts for its benefit, permitting such officer to make the contracts, and receives the benefit of the contracts made by him, it can not subsequently refuse to comply with these contracts on the ground that such officer was without authority to make them. The corporation is bound by these acts of constructive authority and acquiescence; otherwise it would be in the power of the corporation to perpetrate fraud upon innocent parties. The question is not one of knowledge on the part of persons who deal with corporations, but the controlling question is, as to the conduct of the corporation in dealing through its agents with third persons. A corporation is bound when it ratifies or accepts a contract after it is made, or accepts the benefit of the contract. 3 Cook on Corporations, § 716. The evidence in this case is undisputed that the members of this corporation knowingly received the benefit of the contract

made by Frost; that the corporation received the badges, distributed them to its members, and that they were used by the members. Even, therefore, if Frost had no express authority to make the contract, the corporation was bound. Any further discussion of the subject would be profitless. We think the verdict was right, under the evidence (which was practically undisputed), and should not be interfered with, unless there was some material and prejudicial error of law committed during the trial.

In the amended motion for a new trial the able and diligent counsel for plaintiff in error set out numerous assignments of alleged errors in excerpts from the charge of the court and in rulings on testimony. We have examined these excerpts from the charge in connection with the entire charge, and find no merit in any of the exceptions. On the contrary, we think that the charge was a most apt, fair, and full application of correct legal principles to every issue made by the pleadings and evidence. And we think the same can be said as to the rulings on evidence. In other words, we think that the record shows an errorless trial and a correct result. The assignment of error not included in the above is sufficiently covered by the headnote, and needs no additional elaboration.      *Judgment affirmed.*