## 29570. AREY v. DAVIS et al.

INGRAM, Justice.
Plaintiff appeals the trial court's grant of a summary

judgment in favor of defendants in this equitable action seeking either cancellation and rescission of a warranty deed from plaintiff to defendants or the imposition of a resulting or constructive trust on the property to the extent of plaintiff's claimed interest therein.

The plaintiff's complaint is in two counts. Count 1 alleges that plaintiff was the assignee of a sales contract for the purchase of land by R. Stewart Johnson from Jewel C. Gooch; that the defendant lawyers were employed to examine the title to the property and to represent the plaintiff at the closing of the sale; that at the sale closing in defendants' offices, it was agreed that R. Stewart Johnson, the original purchaser under the contract, would contribute $38,500 toward the purchase price and the balance of approximately $19,000 was to be paid by plaintiff; that plaintiff paid his share to the defendant lawyers, but that the check given defendant lawyers by Mr. Johnson to close the sale was later returned unpaid by the bank due to insufficient funds; that the defendant lawyers paid funds to make up the deficiency of $38,500 and then demanded that both Mr. Johnson and plaintiff pay them the $38,500, but neither was able to do so.

Plaintiff's complaint further alleged that "in reliance upon the advice of defendant law firm through Ronald L. Quigley, Johnson and plaintiff executed a demand note for $38,500, payable to the firm members, and a deed to secure debt on subject property and de- livered same to the defendant law firm." Plaintiff also alleged that subsequently the defendants initiated foreclosure proceedings which were withdrawn because "[R]elying upon instructions from the defendant law firm . . . plaintiff executed and delivered a warranty deed conveying all right, title and interest in the property to the members of the firm."

Plaintiff alleges that at all times material hereto he was the client of the defendant lawyers and "[A]ll actions of plaintiff were based upon legal advice from defendants to plaintiff upon which plaintiff relied. Plaintiff was never advised by defendants to seek independent counsel." Count 1 of the complaint contends that under the facts alleged in it, the defendants' acquisition of the property was fraudulent. Count 2 incorporates the allegations of

Count 1 and alleges that because of the attorney-client relationship between the parties, "it was against principles of equity and justice for defendants to acquire fee simple title to subject property without recognizing any right, title or interest in plaintiff . . ." Plaintiff prayed for a jury trial and the specific relief described earlier.

Without detailing all of the evidence considered on the defendants' motion for summary judgment, we find no dispute as to the following material facts: Plaintiff employed defendants to examine the title to the property he was purchasing from Jewel C. Gooch as the assignee of R. Stewart Johnson and to close the sale. Defendants made the title search, prepared the necessary documents to close the sale from the purchaser to plaintiff and handled the receipt and disbursement of funds at the closing of the sale in their offices. At closing, defendants anticipated a check in the amount of $48,500 from plaintiff for the seller. However, Mr. Johnson, the original purchaser on the contract, came with plaintiff to the closing and informed defendants that plaintiff was going to give his check for $10,000 and that he, Mr. Johnson, was going to pay the balance of $38,500 on behalf of plaintiff to close the sale. These two checks were accepted by defendants and deposited in their escrow account. The seller was then given a check for $48,500 by defendants from their escrow account and the seller executed and delivered a warranty deed and other closing documents to the plaintiff as the purchaser. Plaintiff expended other sums under the contract prior to closing, making his total investment in the property approximately $19,000.

Subsequent to the closing, Mr. Johnson's check for $38,500 was returned by his bank unpaid due to insufficient funds and defendants borrowed the money to make their escrow check good to the seller. Defendants were never paid as attorneys for their services. Upon learning Mr. Johnson's check for $38,500 was not honored by his bank, defendants immediately contacted Mr. Johnson in regard to it. Plaintiff testified in his deposition that Mr. Johnson told him, "there had been a problem with the check and it was going to be necessary to sign a note — and Rock Johnson told me that my signature on the note was necessary because I had been listed as the

purchaser on the property, but that he accepted full responsibility for the fact that the check had not gone through and that he would in fact be able to secure funds to make the check good." Plaintiff further testified that Mr. Johnson told him it would be necessary to go to defendants' offices to sign the note. Plaintiff and Mr. Johnson came to defendants' offices and signed a demand note and plaintiff signed a security deed covering the property in favor of defendants. According to defendants, they "did not advise [plaintiff] to sign the deed to secure debt or the note, but were making a courteous insistence that he do so." Defendants did not at any time advise plaintiff to seek independent counsel.

After five or six weeks of frequent contact between the parties about the payment of the note, defendants formally demanded payment and receiving none, began advertisement for foreclosure. Prior to the expected foreclosure sale, defendants were contacted by a real estate agent, who was a friend and business associate of Mr. Johnson, seeking a postponement of the foreclosure sale. As a result of these negotiations, the foreclosure was canceled and plaintiff came to defendants' office where he executed and delivered a warranty deed covering the property to defendants and was given a contract to repurchase the property for the amount of Mr. Johnson's bad check, plus interest. In plaintiff's words, "[t]he arrangement was that the property would be sold to your law firm and that in addition to that an opportunity to rebuy the property could exist . . . within — I believe it was thirty days, something of this nature — by a certain date." Plaintiff thought he had an option to repurchase the property rather than a contract.

Plaintiff testified that he was never able to raise the funds to repurchase the property and it remains in the hands of the defendants who have since attempted to sell it without success. The trial court's order on the motion for summary judgment terminated the case in favor of the defendants and plaintiff appeals to this court for a reversal of that judgment.

We find absolutely no evidence of fraudulent conduct by the defendants in this transaction from our review of the case and hold the trial court correctly ruled in

defendants' favor on the rescission and fraud aspects of the plaintiff's complaint. This leaves for consideration whether the evidence shows some issue with respect to the other relief sought by plaintiff's complaint. This is a close question on the facts of this case. Initially, it must be remembered that defendants were employed by plaintiff to examine the title to the property, prepare the closing documents and represent him in the closing of the sale. This they did and even plaintiff finds no fault with their services in obtaining title to the property for him from the seller. However, the trouble arose because defendants disbursed the purchase price to the seller from their escrow account without waiting for the checks furnished by and on behalf of the purchaser to clear the bank. It is, therefore, clear that the plaintiff's real complaint arises from events transpiring thereafter rather than from any failure of the defendants to perform the services for which they were employed and never paid by the plaintiff.

The plaintiff was obligated to furnish to defendants at closing the monies necessary to pay the seller. He failed to do so and his failure, coupled with defendants' failure to ascertain that both of the purchase money checks were good before making a disbursement thereon to the seller, resulted in the efforts of each of the parties thereafter to protect their own interests. Under these circumstances, we cannot conclude that defendants breached their attorney-client relationship with plaintiff in the original transaction for which they were employed.

However, this conclusion is not dispositive of the difficult issue we face. While it is clear from the evidence before us that plaintiff's actions in signing the note and security deed to defendants following the closing of the original sale, and thereafter in deeding the property to defendants, were not done in reliance upon any advice of defendants, the question remains whether defendants should have advised their former client to seek independent advice from another lawyer before completing these transactions with him. All transactions between an attorney and his client are closely scrutinized by the courts, and the attorney's duty in these circumstances is a much higher duty than is required in ordinary business dealings where the parties trade at

arms length. See 7 AmJur 2d 105-107, Attorneys at Law, §§ 93, 94 and 95; 2 EGL 531, Attorney and Client, § 92.

While the original attorney-client relationship may not have existed at the time plaintiff conveyed the property to defendants, it is undisputed that the latter transactions grew out of their earlier attorney-client relationship involving the same property. We believe that, under these circumstances, an issue remains, and it is whether a fiduciary relationship still existed between plaintiff and defendants which required defendants to advise plaintiff to seek independent counsel before they took title to his property from him. Unless this issue is ultimately resolved in defendants' favor, the property to which defendants now hold legal title can be impressed with a constructive trust in recognition of whatever claim plaintiff can prove therein. The full extent of the monetary investment of the respective parties in the property and any specific claim either may have from monies included in these investments cannot be determined in this appeal. These questions become issues in the case only if plaintiff is successful on the primary issue and they are subject to proof and argument in the trial court. See Code § 108-107; and, cf. *Smith v. Blackshear,* 125 Ga. App. 775, 777 (189 SE2d 99).

Our decision is based solely upon the facts of this case disclosed on summary judgment and is limited to these circumstances. It should not be read to deal with any question of attorney fees and the usual and necessary practice of lawyers to negotiate and accept reasonable fees from their clients for legal services.

The summary judgment granted by the trial court which terminated the case in favor of defendants must be reversed for further proceedings in that court consistent with this opinion.

*Judgment reversed. All the Justices concur, except Gunter, J., who dissents.*

ARGUED JANUARY 21, 1975 — DECIDED FEBRUARY 18, 1975 — REHEARING DENIED MARCH 17, 1975.

*Savell, Williams, Cox & Angel, J. Caleb Clark, III, Edward L. Savell,* for appellant.

*Davis, Matthews & Quigley, Baxter L. Davis, L. Brown Bivens,* for appellees.

*Omer W. Franklin, Jr.,* amicus curiae.