68317, 68318. HENSON v. AMERICAN FAMILY CORPORATION et al.; and vice versa.

BANKE, Presiding Judge.
This case originated in May of 1978, as an action in equity by American Family Corporation to require its recently discharged gen-

eral counsel, Kenneth M. Henson, to cease acting in that capacity and to turn over all corporate records and files in his possession. A temporary restraining order granting this relief was issued *ex parte* on the day the suit was filed, and Henson subsequently turned over the requested documents.

No further action has ever been taken on the complaint; however, the case has remained pending on a counterclaim filed by Henson alleging that the corporation breached a long-term retainer agreement with him and that a tortious conspiracy existed among several of its officers and directors to interfere with his rights under that agreement. In addition, Henson alleged a right to idemnification, pursuant to certain provisions of the corporation's articles of incorporation and by-laws, for his legal expense resulting from the litigation. The counterclaim was subsequently amended to assert additional claims for malicious use and abuse of process, libel, and tortious conspiracy to violate Henson's civil rights. The officers and agents who were alleged to have conspired to violate Henson's rights were joined as additional counterclaim defendants, as was American Family Life Assurance Corporation, a wholly owned subsidiary of American Family Corporation. At all times relevant to this litigation, American Family Corporation and American Family Life Assurance Corporation shared many of the same officers and directors (including John Amos, the president and chief executive officer of both companies) and they have been treated by both sides as a single entity for virtually all purposes. They will henceforth be referred to together in this opinion as "American Family."

In November of 1983, following 5-½ years of litigation and discovery which have generated almost 3,000 pages of record, the trial court issued several rulings which are the subject of these appeals. Summary judgment was granted to all the individual counterclaim defendants as to all claims and to American Family as to all the tort claims. However, the court denied cross motions for summary judgment by Henson and American Family as to the breach of contract and indemnification claims. In conjunction with these rulings, the court also granted a motion by American Family to strike all claims for punitive damages. Finally, the court entered an order continuing in effect certain restrictions which it had previously placed on Henson with respect to his attempts to obtain discovery regarding American Family's business dealings in Japan.

Despite the complexity of the litigation, the facts giving rise to Henson's counterclaims may be simply stated. On January 17, 1972, American Family's president, John Amos, delivered a letter to Henson (who had been representing the company for at least a year as a member of the firm of Kelly, Champion & Henson), stating as follows:

"I have S. E. Kelly's letter of December 27, 1971, tendering resig-

726

nation of the firm of Kelly, Champion & Henson as general counsel of American Family Life Assurance Company.

"This will confirm subsequent agreements reached between this company and you.

"You propose to serve as our general counsel and to supervise all legal matters of this company. You have advised that you intend to procure one or more associates and/or partners. While it is agreed that you will manage the account, the nature of our relationship should include a general interest on the part of all of your associates and/or partners. We would be free to call upon any available associate or partner. We expect you to familiarize yourself with the nature of our business and company, its goals and objectives.

"The necessity of your employing one or more associates by virtue of the anticipated volume of work was discussed and the fact that such required, in effect, a long term commitment on your part to such associate or associates.

"It was agreed that in consideration of the above general services, you will receive a retainer fee, effective April 1, 1972, payable monthly, of $27,200.00 for the balance of 1972, and thereafter such retainer shall continue on an annual basis, payable monthly, for a period of not less than five (5) years. In addition to the retainer it would be expected that we would be billed for time and expenses of your associate members and for any extra-ordinary time and effort expended by you, specifically in the matters of actual litigation, prolonged negotiations, securities registrations, acquisitions, mergers, real estate title examinations, etc.

"This letter shall constitute a binding contract between parties; same having been entered into on behalf of our company by me as president and general manager of the corporation. I am certain that our relations will be pleasant and mutually beneficial to you and our company. Please indicate your acceptance on the attached copy."

Henson executed his acceptance of this offer, as requested. On September 18, 1975, Amos sent him another letter, supplementing the 1972 letter as follows:

"Under date of January 17, 1972, I confirmed to you our agreement whereby you would serve as General Counsel of American Family Life Assurance Company. It is recognized that the volume of work requires a long term commitment on your part as well as a long term commitment in providing the desired services. This limits and restricts your general practice. It is to the advantage of the company that you retain your identity as an independent counsel, but at the same time be available on a full time basis.

"Insofar as any employee benefits are concerned you qualify as a full time employee.

"Your salary will be adjusted from time to time to equate in

purchasing power the annual salary when established.

"The minimum term of your employment is extended for an additional ten (10) years and will continue thereafter on an annual basis until terminated or further extended.

"This letter supplements our original agreement."

Henson executed his written acceptance of these terms, and the two letters together constitute the alleged contract upon which Henson seeks to recover.

American Family's Board of Directors initially elected Henson to the position of general counsel in April of 1972, "subject to removal by action of the Board at any time it shall be deemed necessary," and the board continued to elect him to that post each year thereafter until 1978. On May 3, 1978, Amos notified Henson in writing that he was discharged as general counsel and instructed him to surrender all corporate files and records. The action in equity was initiated two days later.

During his tenure as general counsel, Henson's annual salary was increased twice, once in December of 1972 to $30,000 per year, and again as of January 1977 to $45,000 per year. There has never been any dispute as to the amount of compensation called for under the agreement. *Held*:

1. The trial court did not err in concluding that material issues of fact remain to be tried as to whether the letter agreements constitute an enforceable retainer contract between Henson and American Family. The primary factual issue is whether Amos was authorized by the board of directors to enter into such a contract. Under the applicable corporate by-laws, Amos, as president, had general charge of the business and was empowered to sign and execute all "authorized" contracts on American Family's behalf. While it is quite clear that the board of directors never expressly authorized Amos to sign either of the letter agreements, Henson contends that he relied on Amos' implied or apparent authorization to sign such contracts on the corporation's behalf. He further contends that the board impliedly ratified the agreements by confirming him as general counsel annually from 1972 to 1978, with knowledge of their existence. The counterclaim defendants, on the other hand, maintain that the existence of the letters was not revealed to the board until after Henson's discharge; and Amos has testified that at the time he and Henson signed the 1972 letter, he told Henson that the board would never ratify the arrangement if it were submitted for their approval. The counterclaim defendants further argue that Henson is estopped from alleging that he relied in good faith on Amos' apparent authority because, having handled the corporation's legal affairs both before and after 1972, Henson either knew or should have known the extent of Amos' actual authority under the articles of incorporation and by-laws.

While the above circumstances certainly may make it difficult for Henson to prove his case at trial, we cannot conclude as a matter of law on the record before us that the letter agreements either were or were not authorized by the board of directors. Accord *Newton v. Social Circle &c. Co.*, 174 Ga. 320 (162 SE 667) (1931); *Eminent Household of Columbian Woodmen v. George E. Benz & Co.*, 11 Ga. App. 733 (2), 736 (76 SE 99) (1912). Similarly, we cannot say as a matter of law that the transaction does not meet the criteria set forth in OCGA § 14-2-155 (a) (3), governing the validity of contracts between corporations and interested officers. To be entitled to summary judgment, a party must conclusively eliminate all material issues in the case, even those upon which the opposing party would have the burden of proof at trial, and the latter is given the benefit of all reasonable doubts and all favorable inferences which may be drawn from the evidence, with all ambiguities to be resolved in his favor. *J. C. Penney Cas. Ins. Co. v. Williams*, 149 Ga. App. 258, 261 (2) (253 SE2d 878) (1979).

Although the counterclaim defendants raise a plethora of additional defenses to the breach of contract action in addition to Amos' alleged lack of authority, none of them demands a ruling against Henson as to the validity of the contract. The letter agreements clearly purport to be mutually binding upon the parties, and they set forth both the nature of the services to be performed and the consideration to be paid for them with sufficient specificity to comply with the statute of frauds. See generally OCGA § 13-5-30 (5); *Powell v. Adderholdt*, 230 Ga. 211 (2), 212-213 (196 SE2d 420) (1973). See also *Dorsey v. Clements*, 202 Ga. 820, 824 (44 SE2d 783) (1947). We are aware of no support for American Family's contention that a long-term retainer agreement of this type is against public policy. "In this country express contracts between attorney and client as to compensation are generally recognized, and a contract to pay a retaining fee, though the contemplated services are not rendered, is valid and enforceable." *Pickens Co. v. Thomas*, 152 Ga. 648, 652 (111 SE 27) (1922). Although in electing Henson to the position of general counsel the board expressly reserved the right to remove him at any time, we do not view this as necessarily inconsistent with the existence of long-term contractual rights on his part. Pursuant to OCGA § 14-2-151 (a), the board of directors always has the right to remove a corporate officer or agent; however, OCGA § 14-2-151 (d) provides that such removal shall be "without prejudice to the contract rights, if any, of the person so removed."

2. We do not address Henson's argument that John Amos may be held individually liable for fraud or breach of contract in the event it is ultimately determined that he misrepresented the extent of his authority, for Henson did not assert such a counterclaim against Amos until after the trial court had already ruled on the motions for

summary judgment. Thus, the trial court has made no ruling on this issue one way or the other.

3. The trial court erred in denying American Family's motion for summary judgment with respect to Henson's indemnification claim, as it is clear that no present right of action for indemnification exists under the relevant articles of incorporation and by-laws. In accordance with OCGA § 14-2-156 (a & d), the relevant articles of incorporation and by-laws provide that the right of a corporate officer or agent to be indemnified for legal expenses incurred in connection with litigation in which he has not prevailed shall be contingent upon a proper determination by the board of directors, independent legal counsel, or the holders of a majority of the stock to the effect that the officer or agent in question acted in a manner he reasonably believed to be in the best interests of the corporation. As Henson has not prevailed in American Family's action to obtain injunctive relief against him, and as no proper determination has been made that he has acted in the best interests of the corporation in any phase of this litigation, the claim for indemnification must be considered premature at this time. Consequently, this claim should have been dismissed without prejudice.

4. The trial court did not err in granting summary judgment to all the counterclaim defendants with regard to the claim for tortious interference with contractual rights. John Amos testified in his deposition that he made the decision to discharge Henson on his own, in response to Henson's action in asking him to sign a new retainer contract for a period of 20 years, at approximately $100,000 per year. While it is true that Amos indicated he had been influenced by friction which had developed between Henson and other management personnel, he testified without dispute that he had neither sought nor obtained guidance from any other officers or directors in reaching the decision to terminate Henson. (There is no dispute over whether Amos was authorized to take this action on his own, the corporate by-laws having been amended subsequent to the execution of the 1975 agreement to confer such power upon him with respect to termination of officers.)

We reject Henson's contention that the court-imposed discovery limitations under which he was laboring prevented him from obtaining evidence as to the involvement of the other officers and directors in the decision to terminate him. Discovery on this issue has in fact been exhaustive. Furthermore, even if it were shown that the other counterclaim defendants participated with Amos in the decision to discharge Henson as general counsel, this would not be sufficient in and of itself to establish the existence of a tortious conspiracy to interfere with Henson's alleged contractual rights, provided such participation occurred within the scope of their authority and in their ca-

pacity as directors and officers of the corporation. Accord *Sacks v. McCrory*, 160 Ga. App. 430 (287 SE2d 292) (1981); *Rhine v. Sanders*, 100 Ga. App. 68, 74 (110 SE2d 128) (1959). Compare *Nottingham v. Wrigley*, 221 Ga. 386 (144 SE2d 749) (1965) (where there was evidence that the board members had not only participated in the decision to discharge the plaintiff but had also acted to conceal corporate assets in an attempt to deprive him of any remedy for breach of contract).

We are particularly reluctant to allow such a conspiracy claim where the alleged wrongful act is the discharge of legal counsel, for due to the confidential and highly sensitive nature of the relationship between an attorney and client, public policy mandates that the client be absolutely free to discharge his attorney at any time, for any reason he chooses. See *Dorsey v. Edge*, 75 Ga. App. 388, 392 (43 SE2d 425) (1947). Cf. *Arey v. Davis*, 233 Ga. 951, 955-956 (213 SE2d 837) (1975); *Sams v. Olah*, 225 Ga. 497, 506 (169 SE2d 790) (1969). While the exercise of this right by the client will not necessarily defeat the attorney's right to recover under the provisions of any retainer agreement which may be in force, we hold that under the undisputed facts of record in this case, Henson cannot recover damages in tort from any of the corporate officers or directors merely because they may have participated in the decision to terminate him as general counsel. Accord *Rhine v. Sanders*, supra, 100 Ga. App. at 72-73.

5. The trial court was also correct in granting summary judgment to the counterclaim defendants on the malicious abuse of process claim. "Malicious *abuse* of civil process, as contradistinguished from malicious *use* of civil process, lies when the plaintiff in a civil proceeding wilfully misapplies process of the court in order to obtain an objective such process was not intended by law to achieve. (Cit.) . . . In malicious abuse of process actions there must be an ulterior motive on the part of the plaintiff to employ the process for a purpose for which it was not designed, *coupled with an improper act* in the use of such process *after it has issued* which amounts to its perversion to some unlawful purpose. (Cit.)" *Cooper v. Public Fin. Corp.*, 146 Ga. App. 250, 254 (246 SE2d 684) (1978). See also *Medoc Corp. v. Keel*, 152 Ga. App. 684, 686 (263 SE2d 543) (1979).

There is absolutely no indication in this case that any process of the court was utilized improperly after its issuance. Rather, it is clear that both the summons and the TRO were utilized for the lawful and intended purpose of obtaining possession of the corporate documents in Henson's possession. Compare *West Ga. Pulpwood &c. Co. v. Stephens*, 128 Ga. App. 864 (2) (198 SE2d 420) (1973) (wherein a plaintiff utilized a possessory warrant not only to recover his own property from the defendant but also to seize property in which the plaintiff had no possessory interest). All of the allegations regarding the man-

ner in which the TRO was obtained go to whether that order was properly issued and do not set forth a claim for improper use of the order after its issuance.

6. The trial court was also correct in determining as a matter of law that no liability existed for the malicious use of process. "In malicious *use* of legal process cases, it is incumbent upon the complaining party to show a successful termination of the previous litigation." *Goodwin Agency, Inc. v. Chesser*, 131 Ga. App. 686 (2), 688 (206 SE2d 568) (1974). See also *Cooper v. Public Fin. Corp.*, supra at 254. Although Henson asserts that American Family's original action in equity has terminated in the sense that the files have been returned, this result cannot by any stretch of the imagination be termed favorable to him. Rather, if the original action has terminated, it is only because American Family has obtained the relief it requested.

7. It was also proper to grant summary judgment in favor of the counterclaim defendants as to the libel claim. "All charges, allegations, and averments contained in regular pleadings filed in a court of competent jurisdiction, which are pertinent and material to the relief sought, whether legally sufficient to obtain it or not, are privileged. However, false and malicious such charges, allegations, and averments may be, they shall not be deemed libelous." OCGA § 51-5-8. See *Garrett v. DeWorken*, 148 Ga. App. 656 (252 SE2d 81) (1979). Any republication resulting from a fair and honest report of the proceedings is also privileged. OCGA § 51-5-7 (5). " 'It would be anomalous to hold that a litigant is privileged to make a publication necessary to bring an action but that he can be sued for defamation if he lets anyone know he has brought it.' " *Berger v. Shea*, 150 Ga. App. 812, 813-814 (258 SE2d 621) (1979).

8. The trial court was also correct in granting summary judgment to the counterclaim defendants with respect to the civil rights claim. This cause of action was based on 42 USC § 1983 and was grounded on allegations of a malicious conspiracy between the counterclaim defendants and the judge who issued the TRO. Pretermitting any inquiry into the merits of this claim, we find that it is barred by the statute of limitation.

Because Congress did not establish a statute of limitation for § 1983 actions, the applicable limitation period is determined by reference to the limitation period governing analogous actions under state law. See Bd. of Regents v. Tomanio, 446 U. S. 478, 483-484 (100 SC 1790, 64 LE2d 440, 447) (1980); Proctor v. Flex, 567 F2d 635 (5th Cir. 1978). In this state, "[a]ctions for injuries to the person shall be brought within two years after the right of action accrues, except for injuries to the reputation, which shall be brought within one year after the right act of action accrues . . ." OCGA § 9-3-33. Henson first asserted his § 1983 claim in an amendment to his counterclaim filed

on February 24, 1982, more than three years after the accrual of the cause of action. Thus, unless the amendment may be said to relate back to the date of filing of the original counterclaim, it is barred by the statute.

In general, an amendment changing only the legal theory of the action or adding another claim arising out of the same conduct, transaction or occurrence which is the subject of the original pleading will relate back, while an amendment asserting an entirely new cause of action based on wholly different facts will not. See OCGA § 9-11-15 (c); *Sam Finley, Inc. v. Interstate Fire Ins. Co.*, 135 Ga. App. 14 (2) (217 SE2d 358) (1975). See also *Dover Place Apts. v. A & M Plumbing &c. Co.*, 167 Ga. App. 732 (307 SE2d 530) (1983). Henson's original counterclaim sought recovery for breach of contract, tortious interference with contractual rights, and indemnity. Each of these claims for relief is based on facts which are wholly different from those which are alleged in support of the § 1983 claim, and it cannot be gain said that the latter constitutes an entirely distinct and unrelated cause of action. Consequently, the amendment does not relate back, and the action is barred. Accord *Cole v. Atlanta Gas Light Co.*, 144 Ga. App. 575 (241 SE2d 462) (1978).

9. Since summary judgment was properly granted to all the counterclaim defendants as to all of the existing tort claims, it follows that the trial court did not err in striking the claim for punitive damages. See *Pelletier v. Schultz*, 157 Ga. App. 64, 66 (276 SE2d 118) (1981); *Corrosion Control v. Wm. Armstrong Smith Co.*, 148 Ga. App. 75 (2) (251 SE2d 49) (1978).

10. The trial court did not abuse its discretion in continuing in force the restrictions which had previously been placed on Henson's attempts to discover information relating to American Family's Japanese business interests. The trial court has a wide latitude in determining what is and what is not germane to the issues; and in exercising this discretion, it may consider such factors as the relevancy of the information being sought and the likelihood that the discovery efforts in question are being made for purposes of harassment and intimidation rather than for bona fide discovery purposes. *Browning v. Powell*, 165 Ga. App. 315, 316 (301 SE2d 52) (1983). See also *Schneider v. Spivey*, 240 Ga. 468, 469 (2) (241 SE2d 224) (1978). No abuse of discretion has been shown in this case.

11. For the above-stated reasons, we affirm the denial of the cross motions for summary judgment on the issue of American Family's liability for breach of contract; however, we reverse the denial of American Family's motion for summary judgment with respect to the indemnification claim, with direction that this claim be dismissed without prejudice. The orders granting summary judgment to the counterclaim defendants with respect to the claims for tortious inter-

ference with contractual rights, malicious use and abuse of process, libel, and conspiracy to violate Henson's civil rights are affirmed, as is the order striking the claim for punitive damages. Finally, the order continuing in effect the discovery limitations regarding the so-called "Japanese connection" is also affirmed.

*Affirmed in part and reversed with direction in part. Pope and Benham, JJ., concur.*

DECIDED JUNE 15, 1984 —
REHEARING DENIED JULY 24, 1984 — 

*Francis C. Schenck, Nickolas P. Chilivis,* for appellant.
*Garland T. Byrd, Denmark Groover, Jr., Forrest L. Champion, Jr.,* for appellees.