A93A0412. WILLIAMS v. AFLAC, INC.
(434 SE2d 725)

BLACKBURN, Judge.

AFLAC, Inc., formerly American Family Corporation, the appellee/plaintiff, brought the instant action against Peter Williams, appellant/defendant, seeking declaratory relief as to the enforceability of an agreement in which the chairman of AFLAC agreed to retain Williams to provide legal representation to the corporation for a seven-year period, beginning on January 1, 1988. AFLAC terminated the contractual agreement on June 24, 1991. Williams responded to the declaratory action, and asserted counterclaims against AFLAC and employees of the corporation for damages, based upon AFLAC's breach of the 1987 contract. Thereafter, Williams moved to dismiss AFLAC's declaratory action based upon the failure of the corporation to state a claim upon which relief can be granted, and AFLAC moved for a judgment on the pleadings, or in the alternative, for summary judgment. Following a hearing on the motions, as well as AFLAC's motions to dismiss Williams' counterclaims and to compel discovery, the trial court granted AFLAC's motion for summary judgment on Count 1 of the plaintiff's complaint and on Williams' counterclaims.[1] Without explanation, the trial court concluded that the purported contract between the parties was null and void, and, therefore unenforceable. This appeal followed.[2]

It is undisputed that Williams had been providing legal services to AFLAC for several years prior to 1987. On December 11, 1987, Williams and John Amos, chairman and chief executive officer of AFLAC, discussed the continuation of Williams' representation of the corporation, and mutually decided to execute their agreement in writing. John Amos signed the December 11, 1987, agreement on behalf of AFLAC, whereby the corporation agreed to retain Williams for legal representation for a seven-year period beginning January 1, 1988, at a rate of $4,950 per month for the calendar year of 1988, with the monthly rate increasing to $7,500 per month on January 1, 1992, $10,000 per month on January 1993, and for the period thereafter, the retainer would increase by $12,000 per year. The agreement was sub-

---

[1] Following the trial court's grant of summary judgment in favor of AFLAC, AFLAC dismissed Count 2 of its complaint against Williams without prejudice.

[2] After he asserted counterclaims against various employees of AFLAC, Williams moved to join those individuals to this action, but subsequently voluntarily dismissed the motion.

ject to automatic renewal on the same terms, beginning December 31, 1995, for an additional five years, unless terminated for just cause at least 90 days prior to the expiration of the term. Upon such termination, AFLAC would be responsible for damages in an amount equal to 50 percent of the sums under the remaining terms, plus renewal of the agreement.

On June 24, 1991, Daniel Amos, the nephew of John Amos, notified Williams by a letter of that date that the corporation was "in the process of centralizing all expenses for outside legal fees. As a result of this audit procedure, I am directing that, effective immediately, the retainer being paid to you cease." In a follow-up letter of July 8, 1991, Daniel Amos stated that Salvador Diaz-Verson, president of the company, had informed him that a written agreement existed concerning the fee arrangement. He further stated that he was "under the impression that Sal had been keeping you informed on where we stood in this matter since he had indicated such in his memo to me." Upon receipt of the July 8, 1991, letter, Williams demanded the payment of damages pursuant to the written agreement, attorney fees and expenses of any litigation. Based upon AFLAC's alleged concern as to the validity of the contract, this action was filed on July 30, 1991.

1. In his first enumeration of error, Williams asserts that the trial court erred in denying his motion to dismiss AFLAC's declaratory judgment action in that the factual circumstances in this case are inappropriate for declaratory relief. Williams relies on our decision in *Chattahoochee Bancorp v. Roberts*, 203 Ga. App. 405 (416 SEd 875) (1992) in support of his assertion.

In *Roberts*, Roberts had been terminated from her employment with Chattahoochee Bancorp (Bancorp), and ten days later, requested payment pursuant to a purported contractual agreement between the parties. In her written request for payment, she enclosed a copy of the contract which provided for the terms of her payment, including salary increases, bonus payments, and payments upon termination of her employment. In response to the letter, Bancorp indicated that it considered the matter fraudulent and it intended to fully defend any legal action that may have been brought by Roberts, and intended to seek appropriate sanctions. Thereafter, Bancorp filed an action seeking a determination of the validity of the agreement. We concluded that Bancorp was seeking an advisory opinion to confirm the propriety of its denial of Roberts's claim in the event the denial resulted in future litigation, as Bancorp had affirmatively established its position.

"A declaratory judgment may not be granted in the absence of a justiciable controversy. The object of the declaratory judgment is to permit determination of a controversy before obligations are repudiated or rights are violated. A declaratory judgment is not available to a party merely to test the viability of its defenses." (Citations and

punctuation omitted.) *Roberts* at 406. As in *Roberts*, AFLAC "was not uncertain of its actions and needed no direction with respect to any future conduct on its part. [Cit.]" Id. In its letter of June 24, 1991, the corporation clearly expressed its intention to terminate the fee arrangement as it immediately ceased payment to Williams. AFLAC further noted that it had taken a position in reference to the fee arrangement in its letter of July 8, 1991. As a result, its rights and obligations pursuant to the agreement had accrued at the time of the filing of the declaratory action. Id. "In effect, [AFLAC] is seeking an advisory opinion to confirm the propriety of its denial of [Williams'] claim in the event the denial results in future litigation." Id. at 406-407. Although AFLAC maintains that *Jahncke Svc. v. Dept. of Transp.*, 134 Ga. App. 106 (213 SE2d 150) (1975), controls the facts in the case sub judice, we disagree. In *Jahncke Svc.*, Jahncke made a claim for work completed under a contract, but the department did not deny the claim or take any firm position as to the claim. In the case sub judice, AFLAC terminated the retainer agreement and also ceased future payment to Williams under the retainer arrangement prior to the filing of the underlying action.

Although the trial court declared that the agreement between the parties in the case sub judice was void and unenforceable, we conclude otherwise. "The letter [agreement of December 11, 1987] clearly purport[s] to be mutually binding upon the parties, and [it] set[s] forth both the nature of the services to be performed and the consideration to be paid for them with sufficient specificity to comply with the statute of frauds. [Cits.]" *Henson v. American Family Corp.*, 171 Ga. App. 724, 728 (1) (321 SE2d 205) (1984). The fact that the retainer agreement provides for services on a long-term basis does not make the agreement against public policy. As we responded to AFLAC's assertion in *Henson*, a case involving AFLAC and a similar attorney employment contract "[i]n this country express contracts between attorney and client as to compensation are generally recognized, and a contract to pay a retaining fee, though the contemplated services are not rendered, is valid and enforceable." (Citations and punctuation omitted.) Id. As Justice Bleckley noted in *McNulty, George & Hall v. Pruden*, 62 Ga. 136, 141 (1878), "[i]n the nature of things a retainer is earned when the attorney dedicates himself by contract to his client's service, thereby cutting himself off from employment by the adverse party . . . but so long as the attorney remains able and willing to perform all the service for which he contracted, neither the fault nor the misfortune of his client ought to affect him. . . ." Id. AFLAC further urges this court to overrule *Henson*. However, we decline to do so.

Additionally, AFLAC maintains that the damages provision of the contract establishes a penalty for the termination of the contract.

As we noted in *Duke v. Williams*, 197 Ga. App. 836, 838 (399 SE2d 544) (1990), " '[i]f the parties agree in their contract what the damages for a breach shall be, they are said to be liquidated and, unless the agreement violates some principle of law, the parties are bound thereby.' OCGA § 13-6-7." Based upon our tripartite inquiry into such factors as the difficulty in the exact estimation of damages, the intention of the parties to provide for the damages, and the reasonable pre-estimation of the sum as the probable loss, see *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976), we conclude that the liquidated damages portion of the agreement is enforceable.

Consequently, the trial court erred in failing to grant Williams' motion to dismiss this declaratory action and in granting summary judgment in favor of AFLAC on the declaratory action.

2. Williams also contends that the trial court erred in granting summary judgment in favor of AFLAC on his counterclaim. In light of our decision in Division 1 of this opinion and to the extent that the trial court granted summary judgment in favor of AFLAC on Williams' counterclaim for damages under the original term of the retainer agreement, we agree. However, to the extent that Williams asserts a claim for damages based upon the renewal provision of the retainer agreement, summary judgment in favor of AFLAC was appropriate. Applying the fundamental rules of construction to the terms of the automatic renewal provision contained within the retainer agreement, Williams cannot recover damages based upon the renewal period because the parties did not mutually assent to the renewal of the retainer agreement at or before the date of the renewal, December 31, 1995. See *Nikas v. Hindley*, 99 Ga. App. 194, 198 (108 SE2d 98) (1959). In fact, AFLAC expressed its intention not to renew the contract when the corporation terminated the retainer agreement with Williams in June 1991, four years prior to the date of the automatic renewal of the agreement. In *Henson*, unlike the subject case, there was no future renewal of the contract involved. Where, as here, there is a future renewal provision contained in a contract which has been terminated during its original term, one claiming damages under the contract is ordinarily barred from recovering damages under such renewal provision of the contract due to the absence of mutual assent to the renewal term. Ordinarily, a client is free to terminate its employment of an attorney at any time. *White v. Aiken*, 197 Ga. 29, 32 (28 SE2d 263) (1943). In view of the provision for damages upon termination during the original term contained in the contract, Williams would be entitled to such damages, while he would not be entitled to damages under the renewal provision, as there was no mutual assent to the renewal, and hence no extension agreement to be enforced.

Accordingly, the trial court erred in granting summary judgment

in favor of AFLAC on Williams' counterclaim for damages under the original term of the subject contract.

*Judgment affirmed in part and reversed in part. Johnson and Smith, JJ., concur.*

### ON MOTION FOR RECONSIDERATION.

Williams has filed a motion with this court for costs, pursuant to OCGA § 5-6-5. However, that Code section entitles a successful appellant to a judgment for such costs "as soon as the remittitur is returned to the court below." In *Dept. of Med. Assistance v. Llewellyn*, 197 Ga. App. 231 (398 SE2d 256) (1990), this court concluded that the return of the remittitur is the earliest point in time that an appellant may assert a claim for costs in the appellate court under OCGA § 5-6-5. Accordingly, Williams' claim for such costs should be presented to the trial court upon return of the remittitur.

DECIDED JUNE 25, 1993 —
RECONSIDERATION DENIED JULY 30, 1993 — 

*Long, Weinberg, Ansley & Wheeler, Ben L. Weinberg, Jr., Emily J. Brantley*, for appellant.

*Webb, Carlock, Copeland, Semler & Stair, Thomas S. Carlock, Brian R. Neary, Hatcher, Stubbs, Land, Hollis & Rothschild, Joseph L. Waldrep*, for appellee.

*Champion & Champion, Forrest L. Champion, Jr.*, amicus curiae.