## A03A0876. GEORGIA FARM BUREAU MUTUAL INSURANCE COMPANY v. CROLEY.
### (588 SE2d 840)

ANDREWS, Presiding Judge.

Pursuant to this Court's grant of interlocutory appeal, Georgia Farm Bureau Mutual Insurance Company (Farm Bureau) appeals the trial court's denial of its motion for summary judgment in this action filed by its former attorney, John Croley, Jr. Croley, Jr. alleged breach of contract, tort damages arising from breach of contract, and conversion of his property (legal pads and file folders) contained in 42 case files retrieved by Farm Bureau.

"Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Robinson v. Hunter*, 254 Ga. App. 290 (1) (562 SE2d 189) (2002). Our review is de novo. *Pyle v. City of Cedartown*, 240 Ga. App. 445, 446 (524 SE2d 7) (1999)." *Pearlman v. Security Bank &c. Co. of Albany*, 261 Ga. App. 270 (582 SE2d 219) (2003).

Viewing the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to Croley, Jr., the opponent of summary judgment, it was that, sometime in the mid-1980s, Farm Bureau claims managers Lambert and Yarbrough met with Croley, Jr. at his law office to discuss his possible representation of Farm Bureau. According to Croley, Jr., an oral agreement was reached that Farm Bureau would send cases to him to defend and he would be paid an hourly rate for services performed. No retainer was paid by Farm Bureau. Lambert and Yarbrough assured Croley, Jr.

that he would be allowed to finish the cases he was assigned, but no written contract was ever prepared. Croley, Jr. was not guaranteed any number of cases and assignment of cases was at the discretion of Farm Bureau. As he stated, "I could have, at any point in time, refused a file just like they could have stopped sending them."

Croley, Jr. contended that the agreement with Farm Bureau included when and under what circumstances Farm Bureau could terminate his employment. According to him, he was promised that he would be allowed to "finish the files I was given"; and "as long as I did my job, I would finish those files." According to Croley, Jr., this meant carrying these cases to their ultimate or logical conclusion, whether that be settlement or trial. As he stated, "I'm talking about running them to their logical handling conclusion in the scope and course of representation of the insured or the company, as the case may be." He further said that the only circumstances under which Farm Bureau could take files from him, once he had gotten them, was if "I didn't do the job[,]" or was disbarred.

Croley, Jr.'s daughter Kathy worked for Farm Bureau as a claims representative. On December 17, 1999, a dispute arose between Kathy Croley and a co-worker, Wilson, who called her "sorry" as an employee and reported her failure to prepare a check he had asked her to write to Croley's supervisor. After the check was discovered, however, Wilson did not call back to report this. When Croley, Jr. found out about this, he called Wilson and asked what his problem was with Kathy. Wilson denied calling her "sorry," and Croley, Jr. called Wilson an "arrogant, egotistical, cocky S. O. B." and then said "I am, too. The difference is that I know it, and you haven't figured it out yet."

Later that day, Croley, Jr. spoke to Rocker, the Associate General Manager of Farm Bureau, who had heard about the dispute. Croley, Jr. admitted making the statement and that Wilson had not similarly disparaged him. Rocker told Croley, Jr. that he needed to apologize if he wished to continue his work for Farm Bureau. Croley, Jr. thought about it over the weekend and decided he would not apologize.

After telling Yarbrough on Monday, December 20, 1999, that he would not apologize, Croley, Jr. was called by Yarbrough that afternoon and told that Rocker had directed him to come and get the 42 files Croley, Jr. was handling. Croley, Jr. asked him to wait until the next week, but Yarbrough said it had to be the next day. Croley, Jr. wanted to remove his file jackets, legal pads, and file inserts before the files were taken. Although he considered saying no, Croley, Jr. told Yarbrough his secretary would be there the next day, although he would not, and said "[c]ome down here and whatever y'all want — but just, please, give a list of what you take." Regarding his items

that he was not able to remove, Croley, Jr. stated that they took "[t]hings that weren't theirs that I had not billed them for and never billed them for and wasn't their property, but they took it anyway. Still have it, as far as I know."

The next day, Croley, Jr. filed his original complaint, contending that Farm Bureau breached a contract by terminating their attorney-client relationship and committed a "tortuous [sic] breach of duty based upon contract." On September 25, 2002, Croley, Jr. added his claim that Farm Bureau converted $42 worth of his personal property, the file folders, inserts, and note pads.

Croley, Jr. does not dispute that, following retrieval of the files by Farm Bureau, he was paid for all hours he had billed up until December 21, 1999.

1. Farm Bureau's first enumeration is that the alleged oral contract is unenforceable because there was no definite term of duration and that the damages sought, the recovery of future, unearned hourly fees on the 42 removed files, were speculative and indefinite. We agree.

> The first requirement of the law relative to contracts is that there must be a meeting of the minds of the parties, and mutuality, and in order for the contract to be valid the agreement must ordinarily be expressed plainly and explicitly enough to show what the parties agreed upon. A contract cannot be enforced in any form of action if its terms are incomplete or incomprehensible.

(Citations and punctuation omitted.) *Bagwell-Hughes, Inc. v. McConnell*, 224 Ga. 659, 661-662 (164 SE2d 229) (1968). See also *Razavi v. Shackelford*, 260 Ga. App. 603, 604 (1) (580 SE2d 253) (2003).

Further, the party claiming the existence of a contract has the burden of proving its existence and terms and this proof must be clear and convincing. *Mooney v. Mooney*, 245 Ga. App. 780, 782 (538 SE2d 864) (2000); *Cumberland Center Assoc. v. Southeast Mgmt. &c. Corp.*, 228 Ga. App. 571, 574-575 (1) (492 SE2d 546) (1997).

Croley, Jr. relies on his conversation in the mid-1980s with Lambert and Yarbrough for the establishment of this oral contract. No duration of this arrangement was discussed at the time, nor was there any definition of "ultimate or logical conclusion," prior to which Farm Bureau, according to Croley, Jr., could not terminate the contract absent his mishandling of the case or disbarment.

In *Patel v. Gingrey Assoc.*, 196 Ga. App. 203, 205-206 (2) (395 SE2d 595) (1990), the oral agreement at issue was that one party would not "unreasonably withhold [his] approval" of a qualified buyer of motel stock or property from the Patels. (Punctuation omit-

ted.) Id. at 205. Finding no standards of reasonableness contained in this agreement, this Court concluded that an agreement not to be "unreasonable" in the future was unenforceable because it was subject entirely to conjecture.

Croley, Jr.'s oral agreement is subject to the same failure. There is no definition of what was to be considered the ultimate or logical conclusion of any given case assigned to Croley, Jr., nor were there standards for determining if Croley, Jr. "didn't do the job." See also *Burns v. Dees*, 252 Ga. App. 598, 601-602 (1) (a) (557 SE2d 32) (2001); *Faulkner v. Hood*, 246 Ga. App. 714, 717 (539 SE2d 886) (2000).

Further, there was no stated duration of the agreement, although Croley, Jr. had represented Farm Bureau on a case-by-case basis for over 17 years.[1] The public policy of Georgia is clear and unambiguous that, absent a definite term of employment, the contract is terminable at will. OCGA § 34-7-1; *Schuck v. Blue Cross &c.*, 244 Ga. App. 147, 149 (534 SE2d 533) (2000).

Finally, Croley, Jr.'s claimed damages are also entirely speculative. He contends that he is entitled to recover his hourly rate times the number of hours it would have taken him to bring each case to its ultimate or logical conclusion. Croley, Jr. gave his estimate of $3,000 per removed file as his damages, but admitted that such damages would vary from case to case, depending on the nature of the case and its progress. As in *Jackson v. Ford*, 252 Ga. App. 304, 306 (1) (555 SE2d 143) (2001), any such amount of future compensation is not definite or objectively ascertainable from the oral contract and is, therefore, too indefinite to be enforceable.

2. Farm Bureau's second enumeration, that the trial court erred in denying its motion for summary judgment by not considering the public policy issues involved in the attorney-client relationship, is also meritorious.

In *AFLAC, Inc. v. Williams*, 264 Ga. 351 (444 SE2d 314) (1994), the Supreme Court considered an attorney's suit against his corporate client based on a written long-term retainer contract. Although this Court had concluded that the contract was enforceable,[2] the Supreme Court reversed, concluding that

> [t]he relationship between a lawyer and client is a special one of trust that entitles the client to the attorney's fidelity. [Cits.] This "unique" relationship is "founded in principle upon the elements of trust and confidence on the part of the

---

[1] Although raised by Farm Bureau below in its motion for summary judgment, no argument is made here regarding the statute of frauds. OCGA § 13-5-30 (5).

[2] *Williams v. AFLAC, Inc.*, 209 Ga. App. 841 (434 SE2d 725) (1993).

client and of undivided loyalty and devotion on the part of the attorney." [Cit.] To force all attorney-client agreements into the conventional status of commercial contracts ignores the special fiduciary relationship created when an attorney represents a client. [Cit.] Because of this fiduciary relationship, "a client has the absolute right to discharge the attorney and terminate the relation at any time, even without cause." *White v. Aiken*, 197 Ga. 29, 32 (28 SE2d 263) (1943). A client's discharge of his attorney "is not a breach of the contract of employment but the exercise of his right." *Dorsey v. Edge*, 75 Ga. App. 388, 392 (43 SE2d 425) (1947). This right to terminate is a term of the contract implied by public policy because of the peculiar relationship between attorney and client. [Cit.] A client must be free to end the relationship whenever " 'he ceases to have absolute confidence in either the integrity or the judgment or the capacity of the attorney.' " [Cits.] Our obligation to regulate the legal profession in the public's interest causes us to favor [the client's] freedom in ending the attorney-client relationship without financial penalty over [the attorney's] right to enforce the damages provision in his retainer contract. Requiring a client to pay damages for terminating its attorney's employment contract eviscerates the client's absolute right to terminate. A client should not be deterred from exercising his or her legal right because of economic coercion.

(Footnote omitted.) *AFLAC, Inc. v. Williams*, supra at 353 (1).

On this basis, also, Farm Bureau was entitled to summary judgment.

3. Croley, Jr. also alleged a tort based upon the breach of contract, assuming a valid contract, and Farm Bureau contends it was also entitled to summary judgment on this claim. We agree.

"A tort is the unlawful violation of a private legal right *other than a mere breach of contract*, express or implied." (Emphasis supplied.) OCGA § 51-1-1. "Generally, a mere breach of a valid contract amounting to no more than a failure to perform in accordance with its terms does not constitute a tort or authorize the aggrieved party to elect whether he will proceed ex contractu or ex delicto." *Mauldin v. Sheffer*, 113 Ga. App. 874, 877 (150 SE2d 150) (1966). In other words, "in the absence of injury to life or limb or damage to other property, only a cause of action in contract (is) available." *Kaiser Aluminum &c. Corp. v. Ingersoll-Rand Co.*, 519 FSupp. 60,

69 (S.D. Ga. 1981). See also *E & M Constr. Co. v. Bob*, 115 Ga. App. 127, 128 (153 SE2d 641) (1967).

*Lane v. Corbitt Cypress Co.*, 215 Ga. App. 388, 389 (450 SE2d 855) (1994). See also *Steptoe v. Auto-Owners Ins. Co.*, 210 Ga. App. 756, 758 (3) (437 SE2d 626) (1993) (physical precedent); *Nodvin v. West*, 204 Ga. App. 280, 281 (1), (2) (419 SE2d 120) (1992).

Farm Bureau was entitled to summary judgment on this cause of action.

4. Based on the allegations of tortious breach of contract, Croley, Jr. also alleged that attorney fees, expenses of litigation, and punitive damages were recoverable.

As discussed, supra, there is no basis for tort recovery in this case, and, therefore, Farm Bureau was entitled to summary judgment on this claim.

5. Farm Bureau contends that it is also entitled to summary judgment on Croley, Jr.'s conversion claim,[3] contending that he consented to the removal of the files from his office. The issue of consent, however, is not clear cut and Farm Bureau has not demonstrated its entitlement to summary judgment on this claim.

*Judgment affirmed in part and reversed in part. Barnes and Adams, JJ., concur.*

DECIDED OCTOBER 17, 2003.

*Groover & Childs, Duke R. Groover, Walker, Hulbert, Gray, Byrd & Christy, Charles W. Byrd, Dillard, Bower & Crowley, Terry A. Dillard,* for appellant.

*Gregory, Christy & Maniklal, Gary C. Christy, Preyesh K. Maniklal,* for appellee.

*John T. Croley, Jr.,* pro se.

---

[3] Compare *Jennette v. Nat. Community &c. Svcs.*, 239 Ga. App. 221, 225 (4) (520 SE2d 231) (1999).