No. 25930

## The People of the State of Colorado v. Albert E. Radinsky
(512 P.2d 627)

Decided July 16, 1973.

Duke W. Dunbar, Attorney General, John P. Moore, Deputy, John E. Bush, Assistant, L. James Arthur, Assistant, for People of the State of Colorado.

Sherman, Quinn and Sherman, Edward H. Sherman, for

attorney-respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The respondent, Albert E. Radinsky, was indefinitely suspended from the practice of law in Colorado on November 15, 1971. At the time, an additional complaint was pending before our grievance committee for a series of other acts that were not entirely unrelated in their nature to those that brought about the suspension of the respondent.

The complaint which was pending before our grievance committee has now been heard, and the committee has recommended public censure. We have elected not to follow the recommendation of the committee but to disbar the respondent. We gave the respondent notice of our intention, and he filed a response. His response set forth that he had scrupulously and religiously complied with the order of suspension and that, apart from the instances which related to his suspension, his conduct was unimpeachable and honorable. Our review of the record before this Court does not support the second part of his statement.

The attorney general's formal complaint against the respondent, in this instance, contained three counts, two of which the committee dismissed for failure of the attorney general to prove the commission of the offenses by clear and convincing evidence. In the opinion of the committee the charge which was proven by clear and convincing evidence related to the respondent's handling of a personal injury case for Mr. and Mrs. Roger Good and their children. The record reflects that the respondent undertook to represent the Goods on a contingent-fee basis and prepared the case for trial. In the course of the trial, the respondent sought and obtained a mistrial. Before the trial was commenced for the second time, the respondent and his clients suffered a serious breach in the attorney-client relationship. When the breach

occurred, the respondent demanded immediate payment of $2,714.56 which he said he had incurred as costs in the preparation of the case. His clients then sought to obtain other counsel and finally tendered the costs that were allegedly owed. The respondent refused the costs, demanded payment of a fee which he claimed was due and owing, and filed a lien claiming a fee of $32,600, in addition to the costs. He, thereafter, claimed a lien and refused to release any of the documents or suit papers in his file on the basis of C.R.S. 1963, 12-1-10.

The grievance committee found that the contingency contract which the respondent prepared called for the payment of 33-1/3% of any and all moneys collected by reason of settlement, compromise, or adjustment, and 40% if suit was instituted on behalf of the Goods. The committee concluded that the irreconcilable differences which existed between the respondent and his clients either caused the clients to discharge the respondent or placed the respondent in the position where he refused to take further action on behalf of his clients. The committee found that the respondent demanded that the Goods get another lawyer and immediately pay the sum of $32,600, which was 40% of the amount claimed in the complaint, in addition to the costs, before he would release the files. It is also clear that the respondent refused to sign a withdrawal of appearance before he was paid the full amount set forth in the lien statement. Finally, after a suit for a mandatory injunction and dissolution of attorney's fee was filed and a hearing was held, the respondent turned over the files to his clients.

The grievance committee found that the notice of lien which stated that the respondent's agreement with his clients was that they would pay him $32,600 from the proceeds of the suit was misleading, to say the least. In our view, an attorney's lien which misstates facts and is utilized to overreach and to force payment of more than is owed cannot be tolerated. The agreement upon which the attorney's lien was predicated was contingent and granted the respondent, at best, only the right to recover the reasonable

value of his services when he was discharged. The respondent's claim was in *quantum meruit* and not for the allegedly agreed upon sum of $32,600. *See In the Matter of Charles Quinn,* 25 N.J. 284, 135 A.2d 869 (1957). *See also Hubbard v. Goffinett,* 253 Ky. 779, 70 S.W.2d 671 (1934). No agreement existed to pay a fee of $32,600, and the prayer in a complaint for personal injuries, coupled with a contingent-fee contract, does not provide a basis for asserting that such an agreement exists.

■ Our grievance committee found that under the circumstances of this case the respondent was not justified in retaining the files of his clients and in causing a delay of more than one year and that he jeopardized his former clients' right to prosecute their claim for personal injuries. The respondent's actions were contrary to the highest standards of justice, honesty, and morality. *See People v. Radinsky,* 176 Colo. 357, 490 P.2d 951 (1971).

Accordingly, we disbar the respondent and order that his name be stricken from the list of attorneys authorized to practice before this Court.

MR. CHIEF JUSTICE PRINGLE and MR. JUSTICE DAY do not participate.