OPINION OF THE COURT

Per Curiam.

Judgment entered March 24, 1982 is affirmed, with $25 costs.
The plaintiff, under a retainer agreement dated June 6, 1977, retained the defendant attorney, and her “associates”, to represent him in proceedings arising out of his marital difficulties. The June 6,1977 agreement was in the form of letter from the plaintiff to the defendant and was printed on the letterhead of a law firm with which defendant was then associated. Paragraph 1 of the retainer agreement provided that defendant’s fee for representing the plaintiff was to be billed at $100 per hour, with the understanding that the ultimate fee might also reflect the *864 complexity of the case, the result obtained and such other factors as may be relevant. Paragraph 2 of the retainer agreement provides: “I [referring to the plaintiff] hereby agree to a nonrefundable retainer of $2500 (which is not affected by any possible reconciliation between myself and my wife). Said retainer is to be credited against your [referring to the defendant] charges (receipt of $2,500 being hereby acknowledged).” On July 26, 1977 — as a result of both disagreement between the parties over the inability of defendant to personally make a court appearance on plaintiff’s behalf and confusion generated by the severance of defendant’s relationship with the law firm with which she had been associated — the plaintiff discharged the defendant. Plaintiff thereafter brought this action to recover $1,500, claiming that $1,500 of the $2,500 paid on account under the June 6,1977 retainer agreement was unearned. The court below, crediting the defendant with a maximum of 10 hours work on plaintiff’s case and accepting the $100 hourly rate fixed by the retainer agreement, concluded that $1,000 represented the fair and reasonable value of the legal services rendered to the plaintiff by the defendant. Defendant claimed that she should in any event be entitled to retain the entire $2,500 under the “nonrefundable” fee provision of the June 6, 1977 agreement. The court below rejected that argument holding that such nonrefundable retainer provisions violate public policy and are therefore unenforceable.
While the employment of an attorney by a client is largely governed by the contractual provisions of the retainer, elements of trust and confidence endemic in the attorney/client relationship add a dimension to the retainer beyond the terms of the retainer agreement. Thus it has consistently been held in this jurisdiction that irrespective of the express terms of employment, a client may at any time, for any reason, or without any reason, discharge his attorney (Gair v Peck, 6 NY2d 97; Martin v Camp, 219 NY 170). A necessary corollary of the rule that a client has an unfettered right to discharge his attorney at any time and for any reason is that the client, upon discharging his attorney, cannot be held liable for damages for breach of contract (Gair v Peck, supra; Martin v Camp, *865 supra; Crowley v Wolf, 281 NY 59). An attorney employed under a contract providing for a specific fee, who is discharged without cause, is relegated to recovery upon quantum meruit for services rendered prior to discharge (Matter of Montgomery, 272 NY 323; Pratt v Hurley, 2 AD2d 983; Martin v Camp, supra; Myers v Myers, 2 AD2d 835). Moreover, an attorney, as an officer of the court, is judged as such, and contractual rights will yield to the court’s inherent and statutory power to regulate the practice of law, including the charging of fees for legal services (Gair v Peck, supra; Matter of First Nat. Bank of East Islip v Brower, 42 NY2d 471; Reisch & Klar v Sadofsky, 78 AD2d 517).
The arguments made by defendant on appeal are similar to those made in the court below. She claims that the propriety of “nonrefundable” retainer agreements is demonstrated by their widespread use, especially among attorneys practicing matrimonial and criminal law. Defendant contends that since there is some authority for the proposition that legal fees, once paid to an attorney, may not be recovered by a client who has discharged the attorney without cause, at least where that was the implicit intent of the parties (citing Fellner v Zuckerberg, 202 Misc 611; Riehl v Levy, 43 Misc 59; Gross v Russo, 47 AD2d 655), it necessarily follows that where parties have, as here, expressly “agreed” to a “nonrefundable” retainer, that express agreement should be enforced. Defendant further argues that a “nonrefundable” retainer agreement provides an attorney with a permissible “minimum fee”, consideration for which is the attorney’s commitment to the client of availability. Indeed defendant suggests that the willingness to pay such a minimum fee makes it possible for a client to retain an attorney of particular renown and reputation.
That so-called “nonrefundable” retainer agreements are widely used by certain segments of the Bar is hardly dispositive of the issue now before this court. Defendant has cited no case in which the enforceability of a “nonrefundable” retainer provision was at issue, and we find none. We do not believe that Gross v Russo (supra), Fellner v Zuckerberg (supra) and Riehl v Levy (supra) are disposi *866 tive of the issue of whether a “nonrefundable” retainer provision is enforceable. In Gross v Russo (supra), the Appellate Division, Second Department, noted that the conscionability of a fee paid to an attorney for services rendered prior to discharge depends on: “a full exploration of all the facts and circumstances, including the intent of the parties and whether the fee demanded is out of proportion to the value of the attorney’s services”. Fellner v Zuckerberg (supra) expresses very much the same thought in a very short opinion. Riehl v Levy (supra) is a tenuous precedent since it predated the landmark case of Martin v Camp (219 NY 170, supra), which first firmly established in this jurisdiction that a client’s “right” to discharge his attorney at any time without cause is an inherent element in an attorney’s contract of employment, implied from the attorney/client relationship, and that consequently a discharged attorney can recover only on a quantum meruit basis (see, also, Demov, Morris, Levin & Shein v Glantz, 53 NY2d 553; Jackson v Baltimore, 202 Misc 209).
We view unenforceable any contractual provision which constrains a client from exercising his right to freely discharge his attorney. A retainer provision which requires a client to pay for legal services in advance, and which permits the attorney to retain the advance payment irrespective of whether the services contemplated are rendered, necessarily has a chilling effect upon a client’s right to freely discharge his attorney. Indeed the larger the amount of the so-called “nonrefundable” retainer, the more securely is the client held hostage to that payment.
Moreover, a “nonrefundable” retainer may be viewed as a mechanism for liquidating damages for discharging an attorney at the amount by which the payment made on account exceeds the actual value of legal services rendered. Since, as noted above, a client will not be cast in damages for discharging his attorney, imposition of damages in the form of a forfeited payment on account is unacceptable.
The court below in concluding that the reasonable value of the legal services rendered by the defendant was only $1,000, necessarily determined that the balance of the plaintiff’s $2,500 payment to the defendant, i.e., $1,500, *867 was unearned by the defendant. DR 2-110 (B) of the American Bar Association Model Code of Professional Responsibility, which has been adopted by the New York State Bar Association, provides that a lawyer “shall withdraw from employment * * * if * * * (4) * * * [he] is discharged by his client.” DR 2-110 (A) provides that “(3) A lawyer who withdraws from employment shall refund promptly any part of a fee paid in advance that has not been earned.” Since the defendant only “earned” $1,000 of the $2,500 fee prepaid by the plaintiff, the plaintiff is entitled to return of $1,500.
Accordingly, the judgment appealed from should be affirmed.