ESTATE OF Dwight FORRESTER,
Appellant (Plaintiff Below),

v.

P. Robert DAWALT, Jr., Appellee
(Defendant Below).

No. 27A02–8909–CV–441.[1]

Court of Appeals of Indiana,
First District.

Nov. 27, 1990.

Rehearing Denied Jan. 16, 1991.

T. Michael Smith, Peru, for appellant.

P. Robert Dawalt, Jr., Marion, for appellee.

ROBERTSON, Judge.

The estate of Dwight Forrester appeals the award of $15,000.00 in attorney fees approved by the probate court based on a fixed fee contract between the Estate and attorney, P. Robert Dawalt, Jr., who was discharged by the Estate after performing less than thirty hours of service. The Estate raises three issues. Because one mandates our reversal, we address it only.

FACTS

P. Robert Dawalt, Jr. had been Dwight Forrester's attorney. Dawalt had represented Forrester in his 1987 divorce and had also drafted his will in 1987. Under this will, Forrester appointed Ed Shafer, his former son-in-law, as his personal representative.

Forrester died November 4, 1988. Shafer hired Dawalt to represent him in the administration of Forrester's estate. Dawalt and Shafer entered into an oral agreement whereby Shafer would pay Dawalt $15,000.00 in advance as a fixed fee for his services. Dawalt was to be paid an additional $5,000.00 if the will was contested or if other complications arose. Shafer paid Dawalt $15,000.00.

Dawalt performed the routine services attendant to opening the estate. He met with Shafer and his wife on two or three occasions. He attended the lock box opening at the bank. He prepared and filed a petition to probate the will and to open the Estate. He prepared and caused to be published a notice to creditors. He prepared and filed an inventory and appraisal (based on the evidence presented in the final hearing of Forrester's dissolution action). He wrote to the area banks to inquire whether they held bank accounts or other assets owned by Forrester. He settled two insurance claims on behalf of the Estate.

Dawalt testified that he did not keep time records for these services because of the fixed fee arrangement. His testimony concerning the services rendered indicated

---

1. This case was diverted from the Second District by direction of the Chief Judge.

he spent less than thirty (30) hours administrating the Estate.

Shafer discharged Dawalt and hired another attorney to represent the Estate. Dawalt filed a Petition for Allowance of Attorney Fees upon which the court held a hearing. Dawalt presented the testimony of two attorneys on the reasonableness of the fee. One attorney testified the fixed fee arrangement of $15,000.00 was reasonable because a proper fee would be 5% of Forrester's Gross Estate of $408,613.00. The other testified that a reasonable fee for the administration of Forrester's estate would range between $20,000.00 and $25,000.00. The Estate argued that Dawalt was only entitled to the reasonable value of the services actually rendered before being discharged. The trial court awarded Dawalt the full value of the contract, $15,000.00.

■ It is unclear why Shafer discharged Dawalt. The Estate argues that Shafer lost his trust and confidence in Dawalt because—after Shafer paid the $15,000.00 fee in advance—other persons informed him that attorneys were to be paid near the end of the administration of the estate and that the attorney's fee must be approved by the court. (Appellant's reply brief p. 5, supported by Shafer's testimony at R. p. 148, 149.) In any event, it appears be obvious that the trial court—in ultimately awarding Dawalt the full value of the contract—found that Shafer discharged Dawalt without cause.

### DECISION

The Estate argues the trial court erred in finding that Dawalt was entitled to the full contract amount of $15,000.00. The Estate argues that Dawalt is entitled only to the reasonable value of his services actually rendered under a theory of *quantum meruit.*

**2.** The two cases we rely on, *Jacobson* and *Fox, supra,* were decided pursuant to the A.B.A. Model Code of Professional Responsibility DR 2–110(A) & (B). Although Indiana attorneys are governed by the Model Rules of Professional Conduct, we are convinced that—because of the similar language employed—the Code and the Rules demand the identical result under the

We agree with the Estate. Ind. Professional Conduct Rule 1.16(d) reads as follows (pertinent part only):

Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ... *refunding any advance payment of fee that has not been earned.* (Emphasis added.)

A pertinent part of the official commentary to the above rule reads as follows:

A client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services.

Comment to Prof.Cond.R. 1.16, p. 513 of the 1990 Indiana Rules of Court (West).

We are impressed with the modern authority addressing the present question of whether—under the modern rules or code governing attorney conduct and responsibility—an attorney discharged without cause can recover damages based on contract. *Jacobson v. Sassower* (1983), 122 Misc.2d 863, 474 N.Y.S.2d 167; *Fox & Associates Co., L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 541 N.E.2d 448.[2] In *Jacobson, supra,* a client hired an attorney and paid a "nonrefundable" retainer fee. The retainer fee was advance payment for legal services and was to be credited against the attorney's bill. The client discharged the attorney before the attorney had exhausted the retainer. The trial court required the attorney to return the unearned portion of the retainer. Affirming on appeal, the *Jacobson* court held that an attorney employed under a contract providing for a specific fee, who is discharged without cause, is relegated to recovery under the theory of *quantum meruit* for services rendered before being discharged. In so holding, the court noted the elements of trust and confidence endemic in an attorney-client relationship add a dimension to

present circumstances. Professors Hazzard and Hodes noted that Rule 1.16, as set out above, was "closely patterned after DR2–110 of the Code of Professional Responsibility." Geoffrey C. Hazzard, Jr. and W. William Hodes, *The Law or Lawyering: A Handbook on the Model Rules of Professional Conduct,* at 287 (1989).

the attorney employment agreement beyond the express terms of the contract. The court noted further that contractual rights will yield to the court's inherent and statutory power to regulate the practice of law, including the charging of fees for legal services. Finally, noting the client's unfettered right to discharge his or her attorney at any time and for any reason, the court held:

We view unenforceable any contractual provision which constrains a client from exercising his right to freely discharge his attorney. A retainer provision which requires a client to pay for legal services in advance, and which permits the attorney to retain the advance payment irrespective of whether the services contemplated are rendered, necessarily has a chilling effect upon a client's right to freely discharge his attorney. Indeed, the larger the amount of the so-called "nonrefundable" retainer, the more securely is the client held hostage to that payment.

474 N.Y.S.2d at 169.

In *Fox, supra,* the client retained a law firm to represent her in a personal injury claim on a contingency fee basis. Her case was assigned to an associate who was primarily responsbile for her representation. The associate severed his relationship with the law firm and informed the client that her case would be handled by a different attorney in the firm. The client did not wish to be passed to another attorney and discharged the firm. Her personal injury claim was settled soon afterwards and the law firm sued the client claiming it was entitled to a percentage of the recovery based upon the contingency fee contract. The *Fox* court abandoned firmly established Ohio precedent to the contrary "in view of the contemporary and regulated status of today's attorney-client relationship relative to fees." *Id.* 541 N.E.2d at 449. The court held that while an attorney who substantially performed under the contract may be entitled to the full price of the contract in the event of discharge "on the courthouse steps," or just before settlement under the theory of *quantum meruit,* an attorney discharged by a client, with

or without cause, is nevertheless limited to the recovery of the reasonable value of his or her services rendered before discharge on the basis of *quantum meruit. Id.* at 450. In so holding, the *Fox* court noted:

The overriding consideration in the attorney-client relationship is trust and confidence between the client and his or her attorney. The right to discharge one's attorney would be of little value if the client were liable for the full contract price. To enforce such an agreement into the conventional status of commercial contracts ignores the unique, fiduciary relationship created by an attorney's representation of a client. There is nothing more critical to the professional relationship between attorney and client than the trust and confidence of the person being represented. Under the rule of *quantum meruit,* the client is protected since the discharge of an attorney is not always caused by a client's dissatisfaction with the quality of the service rendered but, rather, may result from the client's lack of faith and trust or confidence in the attorney. The client need not show cause or present evidence sufficient to constitute legal malpractice or negligence before discharge can be effectuated.

*Id.*

In the present case, holding the Estate liable to Dawalt for the entire $15,000.00 contract price would impose a chilling effect upon the Estate's exercise of its unfettered right to freely discharge its attorney guaranteed by Prof.Cond.R. 1.16. The $15,000.00 fixed fee, paid up-front, would securely hold the Estate hostage to Dawalt's representation in spite of any loss of trust or confidence in Dawalt the Estate may have developed.

We follow the modern authority as expressed in *Jacobson, supra,* and *Fox, supra.* We hold that when an attorney is discharged by a client with or without cause, the attorney's remedy is limited to recovery of the reasonable value of his or her services rendered before discharge on

the basis of *quantum meruit*.[3] Therefore, we reverse and remand with instructions to the trial court to hold a hearing to determine the reasonable value of Dawalt's services rendered before his discharge under the theory of *quantum meruit.*

RATLIFF, C.J., and MILLER, P.J., concur.

**3.** In so holding, we are not unmindful of Dawalt's citation to our supreme court's nineteenth century decision, *French v. Cunningham* (1898), 149 Ind. 632, 49 N.E. 797. The *French* court held that a discharged attorney employed under a contingency fee contract could recover the reasonable value of his services rendered under a theory of *quantum meruit.* The court noted in dictum that an attorney discharged in violation of a contract could choose whether to recover under a theory of *quantum meruit* or sue upon the contract for the breach thereof and recover the amount that would compensate him for the reasonable value of the services rendered as well as his loss on account of not being allowed to complete the contract. Although the dictum in *French* was appropriate under law applicable in the nineteenth century, it does not control today's decision. Today's decision—rendered over 90 years later in the advent of the twenty-first century—is based on the contemporary and regulated status of the attorney-client relationship as governed by the Model Rules of Professional Conduct.