**OLSEN AND BROWN, a law partnership and John R. Olsen, Plaintiffs–Appellants,**

v.

**CITY OF ENGLEWOOD, a Colorado home rule city, Defendant–Appellee.**

No. 92CA1241.

Colorado Court of Appeals,
Div. V.

July 1, 1993.

As Modified on Denial of Rehearing
Aug. 5, 1993.

Certiorari Granted Jan. 24, 1994.

Olsen & Brown, John R. Olsen, Boulder, for plaintiffs-appellants.

Hall & Evans, David R. Brougham, Denver, for defendant-appellee.

Opinion by Judge TAUBMAN.

In this action for damages based upon termination without cause of an attorney-client relationship, plaintiffs, Olsen & Brown, a law partnership, and John R. Olsen, individually, appeal the trial court's partial summary judgment entered in favor of the defendant, City of Englewood. We affirm and remand for further proceedings.

The following facts are not in dispute. The parties entered into an oral agreement whereby plaintiffs were to represent the City in toxic tort litigation to its conclusion, including all appeals. Plaintiffs billed a monthly set fee starting in October 1989, devoted substantially all of their time to the City's legal work, and even retained outside counsel for consulting purposes. In December 1990, the City terminated the attorney-client relationship without cause.

Plaintiffs' complaint against the City alleges breach of contract, equitable estoppel, and misrepresentation. The City moved for dismissal pursuant to C.R.C.P. 12(b)(5), or in the alternative, under the doctrine of sovereign immunity. Since the trial court considered materials outside of the complaint, the City's motion was treated as a motion for partial summary judgment.

Construing the contract here as "an open-ended agreement for legal representation," the court held that it "does not bind a client for a financial obligation to an attorney discharged without cause."

Thus, the trial court granted summary judgment in favor of the City, ruling that plaintiffs were not entitled to any unearned fees.

Summary judgment is a drastic remedy to be granted only when there is a clear showing that the controlling standards have been met. It is appropriate only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Churchey v. Adolph Coors Co.*, 759 P.2d 1336 (Colo.1988).

In determining whether summary judgment was properly entered, an appellate court must accord the nonmoving party the benefit of all favorable inferences that may reasonably be drawn from the undisputed facts, and all doubts must be resolved against the moving party. *Mancuso v. United Bank*, 818 P.2d 732 (Colo.1991).

## I.

Plaintiffs argue that *Mutter v. Burgess,* 87 Colo. 580, 290 P. 269 (1930) is controlling on the breach of contract claim. We disagree.

In *Mutter,* the client contracted to pay a $1,000 retainer fee and then either an additional $500 or $1,500 depending on the outcome of the trial. The client, in fact, paid only $200 of the $1,000 retainer, and the supreme court affirmed the award of this $800 difference to the lawyers.

In our view, *Mutter* is distinguishable on its facts from the instant case.

First, in *Mutter,* the lawyers sued only for the balance of a retainer under their contract of employment. Significantly, they did not seek an additional amount to which they would have been entitled under the contract of employment. Thus, while the recovery they obtained from the supreme court was based upon breach of contract principles, it was limited to the unpaid portion of an initial retainer. Here, by contrast, plaintiffs seek far more than merely an unpaid retainer. They wish to obtain an unspecified sum based upon their view that their contract of employment provided for them to represent the City on an ongoing basis until the conclusion of certain litigation.

Second, *Mutter* might well be decided differently today because of ethics rules promulgated by the supreme court after *Mutter* was decided.

Thus, Code of Professional Responsibility DR 2–110(A)(3), in effect at the time this action arose, requires that "a lawyer who withdraws from employment shall refund promptly any part of the fee paid in advance that has not been earned." *See* Colorado Rules of Professional Conduct 1.16(d). When a client discharges counsel, he or she must withdraw. Code of Professional Responsibility; DR 2–110(B)(4); *see* Colorado Rules of Professional Conduct 1.16(a)(3). Additionally, Code of Professional Responsibility DR 2–106(A) provided that a lawyer "shall not enter into an agreement for, charge, or collect an illegal or clearly excessive fee." *Cf.* Colorado Rules of Professional Conduct 1.5(a) (lawyer's fee shall be reasonable). Accordingly, because of these ethical rules, the circumstances presented in *Mutter* would, in our view, require a court to conclude that any unearned part of a retainer must be returned to the client.

Plaintiffs make an argument, to which we are not unsympathetic, that they devoted their entire firm's resources to fulfillment of their employment contract with the City. Thus, when the City then discharged the plaintiffs without cause, they were left to suffer a wrong without a remedy.

█ While this may be so, we conclude that when an attorney is employed under a fixed fee contract to render specific legal services and is discharged by the client without cause, the attorney is entitled only to compensation for the reasonable value of the services rendered up to the time of the discharge.

Two intermediate appellate courts recently have addressed circumstances similar to those presented here. In *O'Brien v. Plumides*, 79 N.C.App. 159, 339 S.E.2d 54 (1986), our sister court was confronted with a decision of its state supreme court which had applied breach of contract principles to the termination of a fixed fee employment contract between a client and an attorney. There, the court noted that the North Carolina Supreme Court had "implicitly adopted the modern rule" with its adoption, first, of the Code of Professional Responsibility and, second, with its adoption of the Rules of Professional Conduct.

Under this "modern rule," a client's discharge of his or her attorney is not considered a breach of contract since "it is a basic term of the contract, implied by law into it by reason of the special relationship between the contracting parties, that the client may terminate the contract at will." *O'Brien v. Plumides*, 79 N.C.App. at 161, 339 S.E.2d at 55. Thus, the *O'Brien* court concluded that the client had a right to discharge his or her attorney at any time, pursuant to the Code of Professional Responsibility or the Rules of Professional Conduct, but the lawyer was entitled only to recover the reasonable value of the services he or she had already provided—in other words, a *quantum meruit* recovery.

Similarly, the intermediate appellate court in Indiana reasoned that both the Rules of Professional Conduct and the Code of Professional Responsibility militated in favor of the conclusion that "an attorney employed under a contract providing for a specific fee, who is discharged without cause, is relegated to recovery under the theory of *quantum meruit* for services rendered before being discharged." *Estate of Forrester v. Dawalt*, 562 N.E.2d 1315, 1316 (Ind.App.1990). In so doing, it distinguished a 90 year-old state supreme court decision which had applied breach of contract principles as an alternative theory of recovery for an attorney discharged in violation of a contract. Analogous to the holding in *O'Brien*, the court found that elements of trust and confidence inherent in an attorney-client relationship implicitly added to the employment agreement a provision to allow the client to terminate the contract at will without penalty.

As in *O'Brien*, the *Estate of Forrester* court noted that the Code of Professional Responsibility and the Rules of Professional Conduct supported its conclusions. In particular, the court noted that Indiana Professional Conduct Rule 1.16(d) provides in pertinent part: "Upon termination of representation, a lawyer shall take steps to the extent reasonably practicable to protect a client's interests, such as ... *refunding any advance payment of fee that has not been earned.*" (emphasis added)

The identical provision of the Colorado Rules of Professional Conduct has been effective since January 1, 1993. It is immaterial that the dispute here arose while the Colorado Code of Professional Responsibility was still in effect. The *Estate of Forrester* court in turn relied on decisions from New York and Ohio which had reached a similar conclusion based upon Code of Professional Responsibility DR 2–110(A) and (B), which it found very similar to Rule 1.16. *See Fox & Associates Co. v. Purdon,* 44 Ohio St.3d 69, 541 N.E.2d 448 (1989); *Jacobson v. Sassower,* 122 Misc.2d 863, 474 N.Y.S.2d 167 (1983).

■ The purpose of these rules is to give the client freedom to move from one attorney to another or to cease litigation without incurring liability. *See Estate of Forrester v. Dawalt, supra.*

We recognize that some jurisdictions retain a rule allowing an attorney discharged without cause to seek recovery under an employment contract based on traditional breach of contract principles. *See Adams v. Mellen,* 618 S.W.2d 485 (Tenn.App.1981); *Nordling v. Northern States Power Co.,* 478 N.W.2d 498 at 501–502 (fn. 2) (Minn.1991) (*quantum meruit* rule "might be adjusted" in a case in which the attorney has changed his or her position or incurred expense, or in a case in which an attorney is employed under a general retainer for a fixed period to perform legal services in relation to matters that may arise during the period of the contract); Annotation, *Measure or Basis of Attorney's Recovery on Express Contract Fixing Noncontingent Fees, Where He is Discharged Without Cause or Fault on His Part* 54 A.L.R.2d 604 (1957).

■ However, we choose to follow the "modern rule," and adopt the view expressed in *Estate of Forrester.* We hold that any contractual provision which constrains a client from exercising the right freely to discharge his or her attorney is unenforceable. Accordingly, we conclude that the City was entitled to discharge plaintiffs without cause and without incurring any further liability, other than payment for services already rendered on a *quantum meruit* theory. In our view, the adoption of both the Code of Professional Responsibility and the Colorado

Rules of Professional Conduct requires us to interpret older case law in the context of existing ethical rules of practice. *See O'Brien, supra; Estate of Forrester, supra; Nordling v. Northern States Power Co., supra; Jacobson v. Sassower,* 66 N.Y.2d 991, 499 N.Y.S.2d 381, 489 N.E.2d 1283 (1985) (affirming *Jacobson v. Sassower, supra*); *Rosenberg v. Levin,* 409 So.2d 1016 (Fla. 1982); *Fracasse v. Brent,* 6 Cal.3d 784, 494 P.2d 9, 100 Cal.Rptr. 385 (1972). In summary, a client has an unfettered right to discharge freely its attorney, without incurring liability under ordinary breach of contract principles.

## II.

Believing the claims of equitable estoppel and misrepresentation "sound in contract or are based on an alleged, contractual relationship," the trial court dismissed them. To the extent this characterization of these claims is correct, we affirm the trial court's dismissal of them for the reasons discussed in part I.

The City argues in the alternative that the equitable estoppel and misrepresentation claims "sound in tort," and therefore, are barred under the doctrine of sovereign immunity. We agree with this argument.

■ A party may defend the trial court's judgment on grounds not decided by the trial court, as long as the party's rights are not increased. *See Farmer's Group, Inc. v. Williams,* 805 P.2d 419 (Colo.1991).

The Colorado Governmental Immunity Act, § 24–10–106(1), C.R.S. (1988 Repl.Vol. 10A) provides that: "[A] public entity shall be immune from liability in all claims for injury which *lie in tort or could lie in tort* regardless of whether that may be the type of action or the form of relief chosen by the claimant...." (emphasis supplied) The exceptions to this immunity, enumerated in the statute, do not apply to the facts here.

Consequently, the question before us is whether plaintiffs' second and third claims are torts or could lie in tort as contemplated by the Act. We conclude that such is the case.

We do not here determine that all estoppel claims could lie in tort, but we note that the

supreme court, in an action for damages, has concluded that: "[E]stoppel is fundamentally a tort theory, based upon a misrepresentation of facts...." *Franks v. Aurora*, 147 Colo. 25, 31, 362 P.2d 561, 564 (1961).

Plaintiffs claim that they relied to their detriment upon a misrepresentation made by the City. The essence of such a claim is either a negligent or intentional misrepresentation, and thus, it could lie in tort. *See Lehman v. City of Louisville*, 857 P.2d 455 (Colo.App.1992). Thus, we conclude that the trial court's dismissal of the equitable estoppel and misrepresentation claims was also supportable on sovereign immunity grounds.

The judgment of the district court is affirmed and the cause is remanded for further proceedings consistent with this opinion.

HUME and DAVIDSON, JJ., concur.