S93G1805. AFLAC, INC. v. WILLIAMS.
(444 SE2d 314)

FLETCHER, Justice.

We granted the writ of certiorari to determine whether a client must pay legal fees to an attorney under a long-term retainer contract

---

after terminating the contract.[1] Reversing the Court of Appeals, we hold that an attorney may not recover damages under a penalty clause when a client exercises the legal right to terminate the attorney's retainer contract.

John Amos, chairman and chief executive officer of AFLAC, Incorporated and Peter Williams, an attorney in private practice, entered into a seven-year agreement in 1987 for Williams to provide legal advice to company officers on an "as needed" basis. Williams was not required to devote 100 percent of his time to the company's business. He was to be paid a monthly retainer and was entitled to additional compensation for work on assigned projects that required an "extraordinary" amount of his time. The contract provided for automatic renewal in 1995 for an additional five years unless terminated. If the company ended the contract, even for good cause, it agreed to pay "as damages an amount equal to 50 percent of the sums due under the remaining terms, plus renewal of this agreement."[2]

After Amos died in 1990, AFLAC's new CEO terminated Williams' monthly retainer in 1991. AFLAC filed a declaratory judgment action to determine the validity of the contract. Williams filed a counterclaim, seeking more than $1 million in damages for breach of contract. Declaring the 1987 contract unenforceable, the trial court granted summary judgment to AFLAC in its declaratory judgment action and on Williams' counterclaim. The Court of Appeals reversed in part, holding valid the retainer agreement and Williams' claim for damages under the original term of the contract, but disallowing his claim based on the renewal provision. See *Williams v. AFLAC, Inc.*, 209 Ga. App. 841 (434 SE2d 725) (1993).

1. This court has the duty to regulate the practice of law. *Sams v. Olah*, 225 Ga. 497, 501 (169 SE2d 790) (1969), cert. denied, 397 U. S. 914 (90 SC 916, 25 LE2d 94) (1970). In exercising this duty, we have sought to assure the public that the practice of law

> will be a professional service and not simply a commercial enterprise. The primary distinction is that a profession is a calling which demands adherence to the public interest as

---

[1] The question presented was: "Whether the Court of Appeals opinion with respect to retainer contracts creates any confusion regarding the ethical conduct expected of an attorney toward a client." This opinion deals only with contracts of attorneys in private practice and does not address the employment relationship between employers and in-house counsel or other full-time employees.

[2] The disputed provision of the contract provides specifically:
This agreement will automatically renew on the same terms and conditions beginning December 31, 1995, for an additional 5 years, unless terminated for just cause at least ninety (90) days prior to the expiration of the term, in which the Company will pay you as damages an amount equal to 50 percent of the sums due under the remaining terms, plus renewal of this agreement.

the foremost obligation of the practitioner.

*First Bank &c. Co. v. Zagoria*, 250 Ga. 844, 845 (302 SE2d 674) (1983). As an officer of the court, the lawyer's obligation to the courts and the public is as significant as the obligation to clients. *Sams*, 225 Ga. at 504.

The relationship between a lawyer and client is a special one of trust that entitles the client to the attorney's fidelity. See *Ryan v. Thomas*, 261 Ga. 661, 662 (409 SE2d 507) (1991); *Freeman v. Bigham*, 65 Ga. 580, 589 (1880). This "unique" relationship is "founded in principle upon the elements of trust and confidence on the part of the client and of undivided loyalty and devotion on the part of the attorney." *Demov, Morris, Levin & Shein v. Glantz*, 53 NY2d 553, 556 (428 NE2d 387, 389, 444 NYS2d 55) (1981). To force all attorney-client agreements into the conventional status of commercial contracts ignores the special fiduciary relationship created when an attorney represents a client. *Fox &c. Co. v. Purdon*, 44 Ohio St. 3d 69 (541 NE2d 448, 450) (1989).

Because of this fiduciary relationship, "a client has the absolute right to discharge the attorney and terminate the relation at any time, even without cause." *White v. Aiken*, 197 Ga. 29, 32 (28 SE2d 263) (1943). A client's discharge of his attorney "is not a breach of the contract of employment but the exercise of his right." *Dorsey v. Edge*, 75 Ga. App. 388, 392 (43 SE2d 425) (1947). This right to terminate is a term of the contract implied by public policy because of the peculiar relationship between attorney and client. See *Martin v. Camp*, 219 N.Y. 170 (114 NE 46, 48) (1916). A client must be free to end the relationship whenever " 'he ceases to have absolute confidence in either the integrity or the judgment or the capacity of the attorney.' " *Fracasse v. Brent*, 6 Cal.3d 784 (494 P2d 9, 100 Cal. Rptr. 385) (1972) (quoting *Gage v. Atwater*, 136 Cal. 170, 172 (68 P 581) (1902)).

Our obligation to regulate the legal profession in the public's interest causes us to favor AFLAC's freedom in ending the attorney-client relationship without financial penalty over Williams' right to enforce the damages provision in his retainer contract.[3] Requiring a client to pay damages for terminating its attorney's employment contract eviscerates the client's absolute right to terminate. A client should not be deterred from exercising his or her legal right because of economic coercion. Since the contract improperly imposes a penalty by requiring AFLAC to pay damages equal to half Williams' re-

---

[3] See generally Brickman & Cunningham, *Nonrefundable Retainers: Impermissible Under Fiduciary, Statutory and Contract Law*, 57 Fordham L. Rev. 149, 156-157 (1988) (arguing that most nonrefundable retainers are unethical and illegal).

tainer, we conclude that the provision is unenforceable.[4]

2. We reach the same conclusion even when evaluating the damages provision under contract law. The Georgia Code provides for liquidated damages when the parties agree what the damages for a breach shall be, "unless the agreement violates some principle of law." OCGA § 13-6-7. In deciding whether a contract provision is enforceable as liquidated damages, three factors must exist. The injury must be difficult to estimate accurately, the parties must intend to provide damages instead of a penalty, and the sum must be a reasonable estimate of the probable loss. *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976). "A term fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." Restatement (Second) of Contracts, § 356 (1).

Contrary to the Court of Appeals, we conclude that the contract's damages provision improperly imposes a penalty by forcing AFLAC to pay damages for exercising its legal right to end the attorney-client relationship. The peculiar language of the provision demonstrates that the parties intended to deter AFLAC from discharging Williams and to punish the company if it did. The contract specifies AFLAC must pay fifty percent of the remaining sums due Williams under both the original seven-year term and the five-year renewal period.[5] This provision requires AFLAC to pay an unreasonably high sum as damages, requires payment without considering Williams' duty to mitigate his damages, and obligates AFLAC to pay even if Williams is discharged for cause.[6] Because the damages provision is not a reasonable estimate of Williams' damages and instead is a penalty imposed to punish AFLAC, we find it is unenforceable as a liquidated damages clause.

*Judgment reversed. All the Justices concur.*

DECIDED JUNE 27, 1994 —
RECONSIDERATION DENIED JULY 14, 1994.

---

[4] Because we base this decision on the invalidity of the damages provision, which was not involved in any case cited by the Court of Appeals, we find those cases distinguishable. See *McNulty &c. v. Pruden*, 62 Ga. 135 (1878); *Henson v. American Family Corp.*, 171 Ga. App. 724, 728 (321 SE2d 205) (1984).

[5] The critical time for examining the parties' intent is when they entered into the contract in 1987. We disagree with the Court of Appeals that it can disallow the damages for the renewal period based on AFLAC's intent as expressed by its termination of Williams in 1991. Either the damages provision is valid as liquidated damages for the entire term of the contract, including the renewal period, or it is invalid as a penalty.

[6] The effect of this provision would be to require a client to pay an attorney terminated for embezzling client funds.

*Webb, Carlock, Copeland, Semler & Stair, Thomas S. Carlock, Brian R. Neary, Hatcher, Stubbs, Land, Hollis & Rothschild, Joseph L. Waldrep,* for appellant.

*Long, Weinberg, Ansley & Wheeler, Ben L. Weinberg, Jr., Emily J. Brantley,* for appellee.

*L. Ray Patterson, Walter R. Phillips, Jack L. Sammons, Champion & Champion, Forrest L. Champion, Jr.,* amici curiae.