**OLSEN AND BROWN, a law partnership, and John R. Olsen, Petitioners,**

**v.**

**CITY OF ENGLEWOOD, a Colorado Home Rule City, Respondent.**

**No. 93SC537.**

Supreme Court of Colorado, En Banc.

Jan. 30, 1995.

---

Olsen and Brown, John R. Olsen, Boulder, for petitioners.

Hall and Evans, L.L.C., David R. Brougham, Josh A. Marks, Denver, for respondent.

Chief Justice ROVIRA delivered the Opinion of the Court.

We granted certiorari to determine whether an attorney may recover damages for a client's breach of a non-contingency contract for legal services without cause; whether the court of appeals can reverse a trial court's judgment on an issue not appealed when it expands the rights of a party; and, whether an attorney's claims resulting from operation of a municipal sanitation facility are barred by the doctrine of sovereign immunity.

We affirm the court of appeals' determination that an attorney may not recover damages under a non-contingency contract for services not rendered prior to such discharge.[1] Because we determine that under the circumstances of this case the claims of misrepresentation and equitable estoppel are barred, it is not necessary to reach issues two and three.

I

The City of Englewood (Englewood) entered into an oral agreement with Olsen & Brown (Olsen), a law partnership, whereby Olsen was to represent Englewood in toxic tort litigation to its conclusion, including all

appeals. Englewood agreed to compensate Olsen for the work by a set monthly fee commencing in October 1989.

The litigation required Olsen to devote substantially all of its time to the case and to forgo other employment in doing so. Olsen made further arrangements in connection with the agreement, including retention of outside counsel to assist with the litigation.

Subsequently, Englewood terminated the attorney-client relationship without cause. Olsen then sued Englewood for damages alleging *inter alia* breach of contract, equitable estoppel and misrepresentation. Englewood filed a motion to dismiss all of the claims, contending Olsen could not recover attorneys fees for legal services not rendered, and that the claims of estoppel and misrepresentation were further barred under the doctrine of sovereign immunity.

The trial court ruled that a client has the right to terminate the attorney-client relationship at any time, with or without cause, and in so doing is not bound to pay for services not yet rendered. Accordingly, it granted the motion in part "with respect to any purported fees not earned for services rendered" as to the claims for breach of contract, misrepresentation and equitable estoppel, and denied the motion as to any "claims for fees earned for services rendered." The trial court also found that Olsen's claims of estoppel and misrepresentation sounded in contract and thus rejected Englewood's argument that these claims were barred by sovereign immunity.

The court of appeals affirmed dismissal of the breach of contract claim, concluding an attorney who "is employed under a fixed fee contract to render specific legal services and is discharged by the client without cause ... is entitled only to compensation for the reasonable value of the services rendered up to the time of the discharge." *Olsen & Brown v. City of Englewood,* 867 P.2d 96 (Colo.App.

---

1. This opinion addresses the stated issue only as it is relevant to attorneys in private practice. We do not express any views on its applicability to attorneys who are employees, including those employed as in-house counsel.

Petitioners suggested for the first time in oral arguments that they were acting on behalf of the city in an in-house counsel capacity. As this argument was not raised prior to this time, it is not properly before this court for review. *Estate of Stevenson v. Hollywood Bar & Cafe, Inc.,* 832 P.2d 718, 720–21 (Colo.1992).

1993). The court also affirmed dismissal of the estoppel and misrepresentation claims "to the extent" the claims sounded in contract or were based on an alleged contractual relationship. *Id.* at 99.

Additionally, the court held the misrepresentation and estoppel claims "could lie in tort," and thus found further justification for dismissal of these claims under the doctrine of sovereign immunity. *Id.* at 99–100.

## II

### A

■ Historically, courts have been in disagreement as to the measure of compensation owed an attorney who has a non-contingency contract with a client and is discharged without cause. *See generally* V. Woerner, Annotation, *Measure or Basis of Attorney's Recovery on Express Contract Fixing Non-contingent Fees, Where He is Discharged Without Cause or Fault on His Part,* 54 A.L.R.2d 604 (1957) [hereinafter Annotation]; Stuart M. Spieser, *Attorneys Fees* § 4:24–:31 (1973 & 1993 Supp.) [hereinafter Spieser].

There is no question that an attorney who withdraws for a justifiable reason or is terminated by a client without cause is entitled to compensation for services rendered. *Jenkins v. District Court,* 676 P.2d 1201 (Colo. 1984). Generally, courts are in agreement that *quantum meruit* is an appropriate measure of recovery in such circumstances. *See, e.g., Smith v. Grauman,* 272 S.W.2d 649, 651 (Ky.App.1954); *Re Montgomery's Estate,* 246 App.Div. 495, 284 N.Y.S. 5, 7 (1935); Spieser § 4:28; Annotation at 616, § 5.

A divergence in opinion, however, results from a consideration of whether recovery of damages under traditional breach of contract principles is also permitted.

Under the traditional "contract rule," courts allow recovery of damages for breach of contract. *See e.g., Mandell & Wright v. Thomas,* 441 S.W.2d 841 (Tex.1969); *Tonn v. Reuter,* 6 Wis.2d 498, 95 N.W.2d 261 (1959)

(contingency fee contract); *see generally,* Spieser § 4:29.

The rationale for the contract rule is based upon assumptions that (1) the full contract price is the most logical measure of damages as it reflects the value placed on the services at the time of the contract's formation; (2) awarding damages prohibits a client from profiting from his own breach of contract; and, (3) it lessens the difficult task of valuing a lawyer's partially completed work. *Rosenberg v. Levin,* 409 So.2d 1016, 1019–20 (Fla. 1982).

However, a modern view has emerged and has been adopted in many jurisdictions, which permits *quantum meruit* as the sole basis for recovery in such situations. *See, e.g., AFLAC, Inc. v. Williams,* 264 Ga. 351, 444 S.E.2d 314 (1994); *Committee on Legal Ethics of the West Virginia State Bar v. Cometti,* 189 W.Va. 262, 430 S.E.2d 320 (1993); *LaRocco v. Bakwin,* 108 Ill.App.3d 723, 64 Ill.Dec. 286, 439 N.E.2d 537 (1982); *Estate of Forrester v. Dawalt,* 562 N.E.2d 1315 (Ind.App.1990); *O'Brien v. Plumides,* 79 N.C.App. 159, 339 S.E.2d 54 (1986); *Jacobson v. Sassower,* 122 Misc.2d 863, 474 N.Y.S.2d 167 (1983). The "*quantum meruit* rule" is premised upon the special confidence and trust existing between an attorney and client which sets the relationship apart from other employment relationships. *Rosenberg,* 409 So.2d at 1020.

### B

The relationship between an attorney and client is a distinct fiduciary affiliation which arises as a matter of law. *Bailey v. Allstate Ins. Co.,* 844 P.2d 1336, 1339 (Colo.App.1992). The foundation of this relationship is grounded upon a special trust and confidence, *Enyart v. Orr,* 78 Colo. 6, 15, 238 P. 29, 34 (Colo.1925), and requires that a client have the utmost faith in chosen counsel.

■ To this end, attorneys are governed by and must adhere to specific rules of conduct which this court has the exclusive jurisdiction to oversee. *Colorado Supreme Court Grievance Committee v. District Court,* 850 P.2d 150, 152 (Colo.1993).[2] Thus, the attor-

---

**2.** Currently, the conduct of attorneys is regulated

under the Colorado Rules of Professional Con-

ney-client relationship may initially be distinguished from other business relationships by virtue of these specific rules and the uniqueness of the governing body under which attorney conduct is regulated. *See Rhode, Titchenal, Baumann & Scripter v. Shattuck,* 44 Colo.App. 449, 619 P.2d 507, 508 (1980) (distinguishing attorney-client relationship from accountant-client relationship on this basis).

These rules are not designed to alter civil liability nor do they serve as a basis for such liability. Code of Professional Responsibility, Preliminary Statement; Colorado Rules of Professional Conduct, Preamble, Scope and Terminology. *See also Bryant v. Hand,* 158 Colo. 56, 404 P.2d 521 (Colo.1965).

Rather, such rules are in place to provide guidance in the attorney-client relationship and to serve as a mechanism of internal professional discipline. Code of Professional Responsibility, Preliminary Statement; Colorado Rules of Professional Conduct, Preamble, Scope and Terminology.

Although not controlling of the issue before us, we must be mindful of these rules and the influence they necessarily have in situations involving the attorney-client relationship.

### C

R.P.C. 1.16 requires an attorney's withdrawal from representation upon discharge by the client. The Comment to this rule states, in pertinent part: "[a] client has a right to discharge a lawyer at any time, with or without cause, subject to liability for payment for the lawyer's services."

■ In order to assure no compulsion to retain an attorney where trust between attorney and client has been broken, and to

further guarantee a client may always be confident with such representation, a client must, and does, have the right to discharge the attorney at any time and for whatever reason. *See Thompson v. McCormick,* 138 Colo. 434, 440, 335 P.2d 265, 269 (Colo.1959). An attorney may not rely upon an indefinite continuation of employment but instead, enters an attorney-client relationship with knowledge that the relationship may be terminated at any time and for any reason.

The unique relationship between attorney and client prevents the agreement between them from being considered as an ordinary contract because doing so would ignore the special fiduciary relationship. *AFLAC,* 444 S.E.2d at 316 (citing *Fox & Associates Co., L.P.A. v. Purdon,* 44 Ohio St.3d 69, 541 N.E.2d 448, 450 (1989)).

■ The right to terminate the attorney-client relationship "is a term of the contract implied by public policy because of the peculiar relationship between attorney and client." *AFLAC,* 444 S.E.2d at 316 (citing *Martin v. Camp,* 219 N.Y. 170, 114 N.E. 46, 48 (1916)). A client's discharge of chosen counsel is not a breach of contract but merely an exercise of this inherent right. *AFLAC,* 444 S.E.2d at 316 (citing *Dorsey v. Edge,* 75 Ga.App. 388, 43 S.E.2d 425, 428 (1947)).

The position which Olsen asks us to adopt would have a profound effect on the power and inherent right of the client to discharge the attorney. To allow an attorney to recover damages for services not actually rendered prior to termination of the attorney-client relationship would penalize the client in direct contravention of the client's absolute right to discharge his attorney. *See LaRocco,* 64 Ill.Dec. at 290, 439 N.E.2d at 541.[3]

duct which went into effect January 1, 1993. Prior to the enactment of these rules and at the time this action arose, the Code of Professional Responsibility governed the conduct of attorneys.

**3.** In support of his position that he has a right to prove and be awarded breach of contract damages, Olsen relies primarily on *Mutter v. Burgess,* 87 Colo. 580, 290 P. 269 (1930). *Mutter* involved a $1,000 fixed retainer agreement between an attorney and his client with an additional amount due, contingent upon the outcome of the

case. The client paid $200 on account and thereafter discharged the attorney without cause. The attorney sued to recover the remaining $800 due under the agreement. The court rejected the argument that recovery was limited to *quantum meruit* and allowed the attorney to recover the full $800 as damages. *Id.* at 583–84, 290 P. at 270–71.

*Mutter* is factually distinguishable from the instant case, and we find Olsen's reliance upon the case to be misplaced. Recovery in *Mutter* was based exclusively upon a non-refundable retainer

The right to discharge is obviously meaningless if the client is penalized by having to pay for services that have not been rendered. The client could conceivably be required to pay duplicate charges consisting of fees to the discharged attorney for services not rendered, in addition to those incurred by a newly appointed attorney for the same work. This does not comport with the rights a client must be accorded in the attorney-client relationship, which this court has recognized, pursuant to our duty to regulate that relationship.

We faced a somewhat similar issue in *People v. Radinsky*, 182 Colo. 259, 512 P.2d 627 (Colo.1973), an attorney discipline case involving a contingency fee agreement. In that case, we declared the attorney had "at best, only the right to recover the reasonable value of [his] services when he was discharged." *Id.* at 262–63, 512 P.2d at 628. *See also Law Offices of J.E. Losavio, Jr. v. Law Firm of McDivitt*, 865 P.2d 934 (Colo. App.1993) (same).

Such a result corresponds with the ethical obligations of an attorney regarding attorney fees. *See People v. Johnson*, 199 Colo. 248, 612 P.2d 1097 (1980) (attorney obligated to return unearned portion of advance payment). *See also* DR 2–110(A)(3) ("lawyer who withdraws from employment shall refund promptly any part of the fee paid in advance that has not been earned"); R.P.C. 1.16(d) ("upon termination of representation, a lawyer shall take steps to ... [assure the] refunding [of] any advance payment of fee that has not been earned"); DR 2–106(A) (fees charged by attorney may not be "clearly excessive"); *cf.* R.P.C. 1.5(a) (fees shall be reasonable).

Although *Radinsky* dealt with a contingency fee agreement, we did not distinguish the amount recoverable in such a situation from that recoverable under a non-contingency fee agreement. Neither do we choose to make such an unnecessary distinction at this time. We are guided by the same principles in both contingency and non-contingency fee cases, *see O'Brien v. Plumides*, 79 N.C.App. 159, 339 S.E.2d 54, 55 (1986), and find any difference would serve only to confuse the principles set forth in this opinion.[4]

### III

■ We believe it necessary to adopt a rule of law which balances the important interests of (1) protecting the special fiduciary nature of the attorney-client relationship and the client's inherent right to discharge and, (2) assuring fair and adequate compensation to an attorney.

Accordingly, we hold an attorney, who is discharged without cause, may not recover damages under a non-contingency contract for services not rendered prior to such discharge. The attorney's remedy is the recovery of the reasonable value of services rendered before discharge on the basis of *quantum meruit*.

Olsen's claims of equitable estoppel and misrepresentation are based solely upon his discharge by Englewood and upon the contractual relationship between the parties. Damages for these claims are barred to the extent they are for fees for services not rendered prior to discharge. Dismissal by the trial court of Olsen's claims for breach of contract, equitable estoppel and misrepresentation was appropriate.

The judgment of the court of appeals is affirmed.

agreement. Here, however, Olsen entered into an oral agreement to represent Englewood for a fixed monthly amount until the conclusion of the case, including appeals.

4. Our opinion in *Elliott v. Joyce*, 889 P.2d 43 (1994) is distinguishable. The facts of that case involved a termination of the attorney-client relationship by the attorney, who then sought recovery for attorney fees on basis of *quantum meruit*. The issue of recoverability of contractual damages was not at issue in *Elliott*. However, we held that recovery of attorney fees in *quantum meruit* under a contingency fee agreement is expressly limited by the Rules Governing Contingent Fees, C.R.C.P. ch. 23.3. *Id.*